SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
 A Limited Liability Partnership
 Including Professional Corporations
GREG S. LABATE, Cal. Bar No. 149918
glabate@sheppardmullin.com
MATTHEW M. SONNE, Cal. Bar No. 239110
msonne@sheppardmullin.com
LISA M. HARRIS, Cal. Bar No. 264460
lmharris@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:  714.513.5100
Facsimile:  714.513.5130

Attorneys for Defendant HILLSTONE
RESTAURANT GROUP, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAIA BRADESCU, as an individual and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>HILLSTONE RESTAURANT GROUP, INC., a Delaware Corporation; and DOES 1 through 10,<br><br>            Defendants. | Case No. SACV 13-1289 GW(RZx)<br><br>Assigned to: Hon. George H. Wu<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HILLSTONE RESTAURANT GROUP INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:     September 18, 2014<br>Time:   8:30 a.m.<br>Crtrm.: 10<br><br>[Notice of Motion and Motion, Statement of Uncontroverted Facts and Conclusions of Law, Appendix of Declarations and Evidence and Request for Judicial Notice Filed Concurrently Under Separate Covers] |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II.   RELEVANT FACTS ....................................................................................3

    A.    Plaintiff's Employment with Hillstone ...................................................3

    B.    Facts Relevant to Plaintiff's Claims for Unpaid Overtime.....................4

        1.    Free Meals......................................................................................4

        2.    Training Bonus ...............................................................................5

        3.    Large Party Gratuity ......................................................................5

    C.    Facts Relevant to Plaintiff's Claims for Meal Period Violations ...........6

    D.    Facts Relevant To Plaintiff's Claim for Waiting Time Penalties...........7

    E.    Facts Relevant to Plaintiff's Claim for PAGA Penalties.......................7

III.  LEGAL ANALYSIS ......................................................................................8

    A.    Standard for Summary Judgment...........................................................8

    B.    Hillstone Is Entitled to Summary Judgment on Plaintiff's State
        and Federal Overtime Claims .................................................................9

        1.    Free Meals Received By Plaintiff Were Properly Excluded
            from the Overtime Calculation ....................................................10

        2.    Training Bonuses Received by Plaintiff were
            Discretionary and Thus Properly Excluded from the
            Overtime Calculation...................................................................12

        3.    Large Party Gratuities Received by Plaintiff Were Non-
            Compulsory Tips and Therefore Properly Excluded from
            the Overtime Calculation.............................................................12

    C.    Hillstone Is Entitled to Summary Judgment on Plaintiff's Meal
        Period Claims .......................................................................................14

        1.    Hillstone Provided Plaintiff with all Required Meal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Periods or Paid Her an Additional Hour Of Pay as
Required Under Section 226.7....................................................15

2.    On Duty Meal Period Provision did Not Invalidate
      Plaintiff's Meal Period Waiver................................................16

3.    Provision Requiring Plaintiff to Provide One Day's
      Written Notice of Revocation of Meal Period Waiver Did
      Not Invalidate Meal Period Waiver.........................................17

D.    Hillstone Is Entitled to Summary Judgment as to Plaintiff's
      Waiting Time Penalties Claim Because She Lacks Evidence That
      Hillstone Willfully Failed to Pay Her All Wages Owed on Her
      Last Day of Employment ...............................................................18

E.    Plaintiff's Claims For PAGA Penalties Are Legally Defective
      Because Plaintiff Failed to Exhaust Her Administrative
      Remedies ........................................................................................19

1.    Plaintiff's PAGA Claim Was Filed Prior To The
      Expiration Of The Statutorily-Mandated Exhaustion
      Period.........................................................................................19

2.    Plaintiff's Letter To The LWDA Also Lacks The
      Requisite "Facts and Theories" To Pass Statutory Muster.........21

3.    Plaintiff's Derivative PAGA And UCL Claims Are
      Subject To Partial Summary Judgment ....................................21

F.    Claims Plaintiff Agreed to Dismiss .......................................................22

IV.    CONCLUSION ...............................................................................................22

SMRH:430841772.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Federal Cases

4

Anderson v. Liberty Lobby, Inc.
5        477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) ...................................... 8

6    Archila v. KFC U.S. Properties, Inc.
         420 Fed.Appx. 667 (9th Cir. 2011) ................................................................... 21
7

8    Celotex Corp. v. Catrett
         477 U.S. 317 (1986) ..................................................................................... 8, 9
9

10   Fontenot v. Upjohn Co.
         780 F.2d 1190 (5th Cir. 1986) .............................................................................. 9

11   Lewis v. Scott
12       97 F.3d 1182 (9th Cir. 1996) ................................................................................ 9

13   Lujan v. Nat'l Wildlife Fed'n
14       497 U.S. 871 (1990) ............................................................................................. 8

15   Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
16       475 U.S. 574, 106 S. Ct. 1348 (1986) .............................................................. 8, 9

17   McFarland v. Guardsmark LLC
         538 F. Supp. 2d 1209 (N.D. Cal. 2008), aff'd, 588 F.3d 1236 (9th Cir.
18       2009) ................................................................................................................... 17

19   Ovieda v. Sodexo Operations, LLC
20       2013 U.S. Dist. LEXIS 99293 (C.D. Cal. 2013) ............................................... 19

21   Soto v. Castlerock Farming & Transp., Inc.
22       2012 U.S.Dist.LEXIS 53109 (E.D.Cal. 2012) .................................................. 21

23   Southern Calif. Gas Co. v. City of Santa Ana
24       336 F.3d 885 (9th Cir. 2003) ................................................................................ 9

25   Taylor v. List
26       880 F.2d 1040 (9th Cir. 1989) .............................................................................. 8

27   Wang Lab., Inc. v. Mitsubishi Elec. America, Inc.
         860 F. Supp. 1448 (C.D. Cal. 1993) ..................................................................... 8

28

-iii-

State Cases

Advanced-Tech Sec. Servs. v. Sup. Ct., (2008) 163 Cal.App.4th 700, 707 ........... 10

Caliber Bodyworks, Inc. v. Superior Court
   134 Cal.App.4th 365 (2005) ................................................................. 19, 20

*Mamika v. Barca*
   68 Cal. App 4th 487 (1998) ......................................................................... 18

Price v. Starbucks Corp.
   192 Cal. App. 4th 1136 (2011) ................................................................... 21

Smith v. Rae-Venter Law Group
   29 Cal. 4th 345 (2002) ............................................................................... 18

The People v. Guevara
   132 Cal. App. 3d 193 (1982) ...................................................................... 16

Federal: Statutes, Rules, Regulations, Constitutional Provisions

29 C.F.R. § 531.52 ......................................................................................... 13

29 C.F.R. § 531.55 ......................................................................................... 13

29 C.F.R. § 531.60 ......................................................................................... 13

29 C.F.R. §§ 548.2, 548.3(d), 548.200(a), and 548.304 ................................ 10

29 C.F.R. § 778.211 ....................................................................................... 12

29 C.F.R. 778.211(b) ...................................................................................... 12

29 U.S.C. § 201 et seq. ...................................... 9, 10, 12, 13, 14, 15, 22

29 U.S. Code § 207(a)(1) ............................................................................... 10

29 U.S.C. § 207(e)(3) ..................................................................................... 10

29 U.S. Code § 207(e)(3)(a) ........................................................................... 12

Fair Labor Standards Act ("FLSA") ................................................................. 1

Fed. R. Civ. P. 56(c) ..................................................................................... 8, 9

Local Rule 7-3 ................................................................................................. 22

-iv-

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Lab. Code § 226.7(c)...................................................................15

Cal Lab. Code § 510(a).......................................................................9

Cal. Lab. Code § 512 (a)....................................................................14

Cal. Lab. Code § 2699.3(a)................................................................19

Cal. Lab. Code § 2699.3(a)(1) and (2) ..............................................20

Cal. Lab. Code, §§ 2699(a) and 2699.3.............................................19

IWC Wage Order No. 5-2001.......................................................14, 15

IWC Wage Order No. 5-2001, § 11(A) .....................................14, 16, 17

Labor Code § 201 ...............................................................................18

Labor Code § 202 ...............................................................................18

Labor Code § 203 ...............................................................................18

Labor Code § 226.7 ..............................................................2, 14, 15, 16

Labor Code § 512 .........................................................................14, 15

Labor Code § 2699.3(a)(1) .............................................................7, 21

Other Authorities

DLSE Enforcement Policies and Interpretations Manual (Revised), § 19.3.5........13

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Maia Bradescu ("Plaintiff") worked for Hillstone Restaurant Group Inc. ("Hillstone") as a server at its Irvine  restaurant from January 21, 2009, until May 14, 2013.  During her employment, Plaintiff also worked as a shift lead on a handful of occasions.  Both the server and shift lead positions are non-exempt positions.  Plaintiff has now filed class claims against Hillstone on behalf of all non-exempt employees in California and nationwide arising from the manner in which non-exempt employees were compensated.  Based on Plaintiff's own damaging admissions at her deposition, many of Plaintiff's claims fail as a matter of law.

First, Plaintiff's claims for unpaid overtime under California law and the Fair Labor Standards Act ("FLSA") fail due to Plaintiff's inherently flawed theories of recovery.  The free "meals" Plaintiff contends she received throughout her employment with Hillstone were properly excluded from her regular rate of pay when calculating overtime.  These meals were often merely "tasting meals" shared at the end of a training shift and used as training tools so that the employees, including Plaintiff, would be more knowledgeable about the food being served to the customers.  Likewise, any training bonuses Plaintiff received were not guaranteed, and were instead discretionary, and therefore also properly excluded from the regular rate of pay calculation.  Finally, any large party gratuities received by Plaintiff during her employment were not compulsory, as customers had the right to leave whatever amount of gratuity they decided,  and therefore these gratuities were also properly excluded from the regular rate of pay for purposes of calculating overtime.  Here, Plaintiff is clearly straining credulity, as well as the basic common sense reading of the law, to create false theories of overtime liability.  Accordingly, Plaintiff's overtime wages were properly calculated and Hillstone is entitled to summary judgment on these claims.

Second, Plaintiff's claim for meal period violations also fails, again based on a unique but flawed legal theory.  Plaintiff's timekeeping and payroll records clearly

-1-

show that Hillstone either provided Plaintiff with meal periods in accordance with state law or paid her an additional hour of pay at her regular rate of compensation as required by Labor Code Section 226.7.  In fact, at the end of each shift, Plaintiff was prompted to attest <u>under penalty of perjury</u> that she was provided with the required meal period, she regularly attested that she was.  In the event Plaintiff responded "no" to such attestation, Hillstone assessed whether a meal period was required under applicable law and if so paid her an additional hour of pay.  Plaintiff admits that she was aware of the meal period policy and that she voluntarily signed two meal period waivers during her employment with Hillstone.  However, the mere existence of an on duty meal provision, one that was never enforced, in the first meal period waiver, and the requirement in the second meal period waiver that the employee give one day's advance notice of revocation does not invalidate the entire meal period waiver. Indeed, Plaintiff completely misreads the legal requirements of a valid meal period waiver.   In any event, Plaintiff concedes that she never attempted to revoke either meal period waiver, so she clearly does not even have standing to bring any claim based on the theory that the waiver was invalid based solely on the one day notice provision.  These undisputed facts alone are fatal to her meal period claim.

Third, Plaintiff's claim for waiting time penalties fails because Plaintiff lacks any evidence that she was owed more wages than she was paid at termination.  She also has no evidence that Hillstone lacked a reasonable basis for believing that it had paid her all the wages she was owed at that time.

Fourth, Plaintiff's claim under the Labor Code Private Attorney General Act ("PAGA") fails because Plaintiff failed to exhaust her administrative remedies, and failed to include the requisite facts and theories to support the alleged violations in her PAGA letter.

Fifth, Plaintiff's derivative claims under the state Unfair Competition Law ("UCL") and PAGA all fail for the same reasons that the underlying claims fail.

It is clear that Plaintiff in this action is aggressively attempting to expand the scope of liability for employers in the State of California by concocting new and clever theories of liability where none previously existed. However, Plaintiff's theories are without merit.  For each of the foregoing reasons, Hillstone respectfully requests that the Court enter partial summary judgment as to each of Plaintiff's claims that the Court agrees fails as a matter of law.

## II.   RELEVANT FACTS

### A.   Plaintiff's Employment with Hillstone

Hillstone operates fine-dining restaurants throughout California and the United States.  (Fact 1.)  Plaintiff was employed as a server at Hillstone's restaurant in Irvine, California from January 21, 2009 until May 14, 2013.  (Fact 2.)  As a server, Plaintiff was responsible for waiting tables and serving customers who came to Hillstone's Irvine restaurant.  (Fact 3.)  At the start of her employment with Hillstone, Plaintiff was provided with an employee handbook which set forth Hillstone's employment policies and expectations.  (Fact 4.)  The employee handbook contained a grievance procedure that employees could use to express any complaints or concerns they had.  (Fact 5.)  Plaintiff was also provided with a California Wage Theft Prevention Act – Wage and Pay Form outlining her hourly rate of pay and her overtime rate of pay.   (Fact 6.)  In addition, Plaintiff received an agreement entitled California Law Regarding Rest and Unpaid Meal Periods.   (Fact 10.)  Plaintiff signed and acknowledged receipt of each of the above documents. (Facts 7, 11.)

Beginning in 2010, Plaintiff also worked several shifts as a shift lead.   (Fact 25.)  As a shift lead, Plaintiff was responsible for managing the flow of customer's orders and ensuring that orders were delivered in a timely manner.  (Fact 26.)  In addition to working as a shift lead, Plaintiff alleges that she was sometimes asked to train new employees.  (Fact 27.)  Both the server and shift lead positions were hourly non-exempt.  (Fact 28.)

### B.   Facts Relevant to Plaintiff's Claims for Unpaid Overtime

#### 1.   Free Meals

Hillstone does not have a policy or practice of providing free meals to non-exempt employees.  (Fact 29.)  A manager may, however, provide a free meal, at his or her discretion, to an employee in many different instances, including but not limited to, when an employee goes above and beyond, assists during a busy shift, to celebrate a special occasion, etc.  (Fact 30.)  A free meal may also be provided to a trainer or trainee during training for purposes of allowing the trainee to experience the food that is being served to Hillstone's customers, to experience the service first hand, hear orders and see how it is delivered, in addition to tasting the food.  (Fact 31.)  To the extent provided, training meals are provided for Hillstone's benefit to facilitate training, not for the benefit of the employee.  (Fact 32.)  These meals are often shared by the trainer and trainee.  (Fact 33.)  Sometimes these free "meals" are nothing more than an appetizer or a dessert, which are often shared between the trainer and the trainee; they are not always full entrees.  (Fact 34.)

Plaintiff testified that she was offered a free meal each time that she worked as a shift lead.  (Fact 35.)  She admitted that she did not always accept the free meal but contended that it was Hillstone's policy to provide free meals to shift leads. (Fact 36.)  In addition, although she denied at her deposition that any other positions received free meals, despite being asked that specific question, in her declaration in support of her motion for class and conditional certification, Plaintiff now alleges that she also received a free meal when she trained new employees.  (Fact 37.)  She did state, however, that she never received more than one free meal per day.  (Fact 38.)

Plaintiff testified that the value of the free meals she received were not included in her regular rate of pay when calculating overtime.  (Fact 39.)  She conceded, however, that she had no expectation that the value of such meals would be included in her regular rate of pay until after she resigned from her employment

with Hillstone.  (Fact 40.)  She never complained to anyone at Hillstone about the value of the free meals not being included in her regular rate of pay and never asked anyone why it had not been included.  (Fact 41.)  The meals were provided completely free and were not applied as a credit to her wages.  (Fact 42.)

To the extent that she worked overtime, Plaintiff's payroll records show that she was paid overtime pay at a rate of at least one and one-half times her regular rate of pay.  (Fact 45.)

### 2.   Training Bonus

Hillstone will sometimes provide a non-exempt employee with a bonus at its discretion.  (Fact 47.)  One such occasion may be when a server does a particularly good job training a new server.  (Fact 48.)  Hillstone does not advertise this training bonus to employees as an incentive to encourage them to train new employees nor does it promise employees who train others that they will receive a training bonus. (Fact 50.)  The training bonus is not guaranteed, is completely discretionary and is generally awarded, if at all, at the time of training.  (Fact 51.)  The amount of the training bonus, if awarded, often varies and is determined in Hillstone's sole discretion.  (Fact 52.)  No employee has a contractual right, express or implied, to the training bonus.  (Fact 53.)

Although not mentioned at her first deposition or in any prior discovery responses, in her declaration in support of her motion for class and conditional certification, Plaintiff alleged that when she trained new servers she received a $40 bonus.  (Fact 46.)  She declared that the bonus was paid separately from her regular paycheck and contends that it was improperly excluded from her regular rate of pay. (Fact 49.)

### 3.   Large Party Gratuity

Prior to January 1, 2014, Hillstone had a "large party gratuity" policy.   (Fact 54.)  Under the policy, servers were required to add an 18% gratuity to parties of five or more.  (Fact 56.)  The purpose of the policy was to prevent potentiality

discriminatory conduct by prohibiting servers from picking and choosing which checks to add the large party gratuity.  (Fact 62.)  Once the gratuity was added, before the check was delivered to the table, a manager would visit the table to inquire regarding the service and experience.  (Fact 60.)  If the manager received mediocre feedback, he or she would remove the large party gratuity from the check. (Fact 61.)  In addition, once the customer received the check, the customer had the ability to either remove, decrease or even increase the recommended 18% gratuity. The large party gratuity was not compulsory.  (Fact 58.)  The customer was <u>never</u> <u>required</u> to pay the 18% gratuity and had the sole discretion to waive, negotiate and otherwise determined the desired amount of the gratuity.  (Fact 56.)  Indeed, many large parties (5 or more customers) left no gratuity at all, despite the recommended 18% gratuity policy.  (Fact 59.)

## C.   <u>Facts Relevant to Plaintiff's Claims for Meal Period Violations</u>

As mentioned, at the start of her employment, on January 21, 2009, Plaintiff signed an agreement entitled California Law Regarding Rest and Unpaid Meal Periods.  (Facts 10-11.)  This agreement included an on-duty meal period agreement and a meal period waiver.  (Fact 12.)  Specifically, the agreement provided, in pertinent part as follows:

> The Company provides meal and rest periods to all hourly employees in accordance with these State laws, Before taking a break please consult with a manager to minimize any disruptions to the restaurant and/or inconvenience to our guests:
>
> (i) For any shifts not exceeding six (6) hours: I voluntarily agree to waive my right to an unpaid meal period for any shift in which I work six (6) hours or less; and/or
>
> (ii) For any shifts exceeding six (6) hours: I acknowledge and agree that the nature of my work prevents me from being relieve of all duty during my meal period, and that I consent to work an "on duty" meal period that will be paid for by the Company.

(Fact 13.)  Despite the inclusion of the on duty meal period agreement in subparagraph (ii) of the above-referenced document, Hillstone never enforced the on

duty meal period agreement.  (Fact 14.)  To the extent that Plaintiff worked a shift over six hours, she either received a 30-minute off-duty meal period or one-hour of additional pay.  (Fact 24.)

On December 13, 2010, Plaintiff signed a second document entitled Acknowledgement Concerning California Law Regarding Meal and Rest Periods. (Fact 15.)  This agreement included two separate meal period waivers: the first waiver related to the meal period for any shifts exceeding five hours but not more than six hours, and the second waiver related to the second meal period for any shifts exceeding 10 hours but not exceeding 12 hours.  (Fact 16.)  The acknowledgement to the agreement provided as follows:

> I have read and understand this Agreement, and am freely and voluntarily entering into it.  I also understand that I may revoke this waiver at any time by providing at least one day's advance written notice to my supervisor.  This waiver will remain in effect until I revoke it.

(Fact 16.)  Importantly, Plaintiff testified that she never attempted to revoke this agreement.  (Fact 17.)

### D.   Facts Relevant To Plaintiff's Claim for Waiting Time Penalties

On Wednesday, May 1, 2013, Plaintiff submitted a letter of resignation providing Hillstone with two weeks' notice.  (Fact 63.)  Her last day of employment was May 14, 2013.  (Fact 64.)  On May 14, 2013, she was issued her final pay check which included all undisputed wages owed through her last day of employment. (Fact 65.)

### E.   Facts Relevant to Plaintiff's Claim for PAGA Penalties

On August 21, 2013 Plaintiff submitted a letter to the California Labor and Workforce Development Agency ("LWDA") for the purpose of complying with Labor Code Section 2699.3(a)(1), which requires aggrieved employees to notify their employer and the LWDA of the specific provisions of the Labor Code allegedly violated.  (Fact 67.)  The very next day, on August 22, 2013, Plaintiff filed

-7-

the complaint in this action.  (Fact 68.)  Plaintiff's Ninth Claim in this action seeks civil penalties under the Private Attorneys General Act.  (Fact 69.)

## III.   LEGAL ANALYSIS

### A.   Standard for Summary Judgment

The Court must render summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The standards and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim.  See Wang Lab., Inc. v. Mitsubishi Elec. America, Inc., 860 F. Supp. 1448, 1450-51 (C.D. Cal. 1993)("Upon a showing that there is no genuine issue of material fact as to particular claims, the Court may grant summary judgment in the [moving party's] favor upon all or any part thereof.").

An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  Id. at 248.  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, (1986).  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also

-8-

1   <u>Celotex</u>, 477 U.S. at 324.  To survive summary judgment, the nonmoving party must

2   produce some "significant probative evidence" tending to support the claim.  <u>Lewis</u>

3   <u>v. Scott</u>, 97 F.3d 1182, 1187 (9th Cir. 1996).  "[C]onclusory arguments unsupported

4   by factual statements or evidence do not meet this burden."  <u>Id</u>.

5       Summary judgment must be granted if the nonmoving party "fails to make a

6   showing sufficient to establish the existence of an element essential to that party's

7   case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477

8   U.S. at 322.  Summary judgment must also be granted if, on the record taken as a

9   whole, a rational trier of fact could not find in favor of the party opposing the

10  motion on the claims at issue.  <u>Matsushita</u>, 475 U.S. at 587.

11      Summary judgment is favored as "an integral part of the Federal Rules as a

12  whole, which are designed to secure the just, speedy and inexpensive determination

13  of every action."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555

14  (1986).  Summary judgment is warranted when the moving party has met its burden

15  of persuading the court that there is "no genuine issue of material fact" and that it is

16  entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  To satisfy its

17  burden, the moving party must establish beyond controversy every essential element

18  of its claim or defense.  <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir.

19  1986); see also <u>Southern Calif. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 888 (9th

20  Cir. 2003).

21  **B.   <u>Hillstone Is Entitled to Summary Judgment on Plaintiff's State
         and Federal Overtime Claims</u>**

22

23      California law requires an employer to pay overtime compensation for "any

24  work in excess of eight hours in one workday and any work in excess of 40 hours in

25  any one work week…at the rate of no less than one and one-half times the regular

26  rate of pay for an employee."  See Cal Lab. Code §510(a).  The Fair Labor

27  Standards Act of 1938, as amended (29 U.S.C. §201 et seq.) ("FLSA"), requires

28  employers to pay overtime compensation for hours worked in excess of 40 hours in

1  a workweek at a rate not less than one and one-half times the employee's regular

2  rate of pay.  See 29 U.S. Code § 207(a)(1).

3      Critically, the term "regular rate of pay" is not defined by state statute, so

4  California courts have looked to the FLSA to interpret the regular rate of pay under

5  state law.  See Advanced-Tech Sec. Servs. v. Sup. Ct., (2008) 163 Cal.App.4th 700,

6  707.  Under the FLSA, the regular rate of pay "at which an employee is employed

7  shall be deemed to include all remuneration for employment paid to, or on behalf of,

8  the employee," subject to certain enumerated exceptions.  29 U.S.C. §207(e)(3).

9      As discussed in detail below, summary judgment of Plaintiff's overtime

10  claims is warranted because each of the items claimed by Plaintiff in this case is

11  properly excluded from the regular rate of pay under one of the enumerated

12  exceptions.

13      **1.**    <u>**Free Meals Received By Plaintiff Were Properly Excluded**</u>

14      <u>**from the Overtime Calculation**</u>

15      Under the FLSA, an employer may exclude the value of a meal provided to an

16  employee if: (a) the employer furnishes no more than one meal per day; (b) the

17  employer enters into an agreement with the employee to exclude the cost of the free

18  meal furnished to the employee from the computation of the employee's regular rate

19  of pay and overtime pay before the employer furnishes the meal; (c) the meal is

20  provided at no cost to the employee and the employer does not credit the value of

21  the meal toward its minimum wage obligation; (d) the employee's regular rate,

22  exclusive of the meal, is equal to or exceeds the minimum wage; and (e) the

23  employee receives overtime compensation at one and one-half her regular rate of

24  pay.  <u>See</u> 29 C.F.R. §§ 548.2, 548.3(d), 548.200(a), and 548.304.

25      At her deposition, Plaintiff alleged that she was offered one free meal every

26  time she worked as a shift lead.  (Fact 35.)  In addition, in her declaration submitted

27  in support of her motion for class and conditional certification, she alleged, for the

28  very first time, despite testifying at her deposition that she was not aware of any

positions other than shift leads receiving free meals, that she received free meals as a server when she trained new employees.  (Fact 37.)  Plaintiff admitted, however, that she never received more than one free meal in a day.  (Fact 38.)  She also acknowledged that she received the California Wage Theft Prevention Act Wage and Pay Form ("WTPA Form") and was explicitly informed of her hourly and overtime rate.  (Facts 7-8.)  The WTPA Form clearly identifies her overtime rate and does not say anything about the inclusion of the value of free meals Plaintiff may receive during her employment.  (Fact 9.)  At the time that Plaintiff received the free meals, she had no expectation that they would be included in her regular rate of pay.  (Fact 40.)  During her employment, Plaintiff never complained about the exclusion of the free meals from her regular rate of pay.  (Fact 41.)  Plaintiff's conduct clearly shows that she understood and implicitly agreed that the value of any free meals she did receive would not be included in her regular rate of pay.  (Fact 43.)  There is no requirement that such agreement be explicit or in writing, and Plaintiff's attempt to state after the fact that she did not "agree" to the exclusion of the free meals she received is both disingenuous and not credible.

Plaintiff was not charged anything for the free meals she did receive and Hillstone did not credit the value of any of the provided free meals towards Plaintiff's minimum wage.  (Fact 42.)  Plaintiff's payroll records, which she authenticated during her deposition, clearly show that she was paid the minimum wage and paid overtime compensation at one and one-half times her regular rate of pay.  (Facts 44-45.)  As such, any free meals provided to Plaintiff during her employment with Hillstone were properly excluded from the regular rate of pay.  Summary judgment is appropriate on this issue because Plaintiff has produced no evidence sufficient to create an issue of material fact regarding the excludability of these meals.

In addition, independent from the above, the "training meals" are also properly excluded from the regular rate of pay because they are provided as a part of

-11

the training for the benefit of Hillstone's customers, not for the benefit of the employees.  Under such circumstances, the meal cannot reasonably be considered as compensation and subject to overtime.

### 2.   <u>Training Bonuses Received by Plaintiff were Discretionary and Thus Properly Excluded from the Overtime Calculation</u>

Under the FLSA and California law, discretionary bonuses are excludable from the regular rate of pay.  <u>See</u> 29 U.S. Code § 207(e)(3)(a); 29 C.F.R. §778.211. Bonuses are discretionary "if the employer retains discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount." <u>See</u> 29 C.F.R. 778.211(b).

While Hillstone <u>sometimes</u> provided a training bonus, of various amounts, to employees to reward them for a job well done, the training bonus was not advertised to employees as an incentive to encourage them to train new employees.  (Fact 50.) Hillstone also did not promise employees who trained others that they would receive a training bonus.  (Fact 50.)  The training bonus was completely discretionary and was generally awarded, if at all, at the time of training.  (Fact 51.)  The amount of the training bonus, if awarded, varied and was determined by Hillstone in its sole discretion.  (Fact 52.)  No employee had a contractual right, express or implied, to the training bonus.  (Fact 53.)  Plaintiff has produced no evidence to support her claim that the training bonus was not discretionary and as such not excludable from the regular rate of pay.  Accordingly, summary judgment should be granted on this issue.

### 3.   <u>Large Party Gratuities Received by Plaintiff Were Non-Compulsory Tips and Therefore Properly Excluded from the Overtime Calculation</u>

Tips received by an employee in excess of the tip credit, if any, taken by the employer need not be included in the regular rate of pay because such tips are not

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

payments made by the employer to the employee as remuneration for employment within the meaning of the FLSA. See 29 C.F.R. § 531.60. The FLSA regulations define a "tip" as a "sum presented by a customer as a gift or gratuity in recognition of some service performed for him." See 29 C.F.R. § 531.52. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity. Id. A tip is distinguishable from a service charge, which does have to be included in the regular rate of pay, because a service charge is "compulsory." See 29 C.F.R. § 531.55. In California, the Division of Labor Standards Enforcement ("DLSE") provides the following additional guidance regarding the difference between a tip and a service charge:

> A charge which must be paid added to a customer's bill for the service is not a gratuity and may be received and disbursed by the employer without limit by Labor Code § 351m *et seq*. (O.L. 1994.01.07 and 2000.11.02). *On the other hand, if the "service charge" or "added gratuity" is waivable or negotiable, or couched in terms of being less than a fixed amount which must be paid, the charge is not an added "charge" to the bill and payment is gratuitous.*

DLSE Enforcement Policies and Interpretations Manual (Revised), § 19.3.5 (*emphasis added*).

Hillstone's large party gratuity was completely voluntary and discretionary. (Fact 55.) While the policy stated that the server was required to add the large party gratuity to a party of five or more, the policy also stated that a manager had to do a "quality check" on the service. (Fact 60.) Moreover, the undisputed evidence clearly shows that the customer was not required to pay the 18% gratuity and had the sole discretion to remove, waive, negotiate and otherwise determine the desired amount of the gratuity. (Fact 56.) The 18% gratuity was only a recommendation to the customer, which each customer had the ability to ignore or modify as he or she saw fit. (Fact 57.) Many large party customers exercised that right and did not leave any tip despite the 18% tip recommendation. (Fact 59.) Given that the

-13

1  customer retained the right to determine whether a tip was given and the amount that
2  was given, Hillstone's large party gratuity was a tip and not a service charge under
3  the FLSA.  Likewise, based on the DLSE guidance, the customer's ability to waive
4  and negotiate the large party gratuity clearly makes it a tip and not a service charge.
5  Thus, Hillstone is entitled to summary judgment on this issue because the large
6  party gratuity was properly excluded from the regular rate of pay.

7       **C.**    **<u>Hillstone Is Entitled to Summary Judgment on Plaintiff's Meal</u>**
                  **<u>Period Claims</u>**
8

9       Labor Code Section 512 requires that employers provide employees with a
10  30-minute off-duty meal period when they work more than five hours in a day,
11  provided, however, that if the total work period is no more than six hours, the meal
12  period may be waived by mutual consent of both the employer and the employee.
13  <u>See</u> Cal. Lab. Code § 512 (a).  Labor Code Section 512 also requires that employers
14  provide employees with a second 30-minute off-duty meal period when they work
15  more than 10 hours in a day, provided, however, that if the total work period is no
16  more than 12 hours, and the employee did not waive the first meal period, the
17  second meal period may be waived by the mutual consent of the employer and the
18  employee.  <u>Id</u>.   There is no requirement that this mutual waiver be in writing.

19       In limited circumstances, IWC Wage Order No. 5-2001, which applies to
20  restaurants such as Hillstone, permits an on duty meal period if the nature of the
21  work prevents an employee from being relieved of all duty.  For an on duty meal
22  period to be permitted, there must be a written agreement between the parties, which
23  must state that the employee may, in writing, revoke the agreement at any time.  <u>See</u>
24  IWC Wage Order No. 5-2001, Section 11(A).

25       Labor Code Section 226.7 allows an employee to recover "one additional
26  hour of pay at the employee's *regular rate of compensation* for each workday"
27  when an employer fails to "provide an employee a meal or rest period" as required
28

1  under a governing IWC Wage Order.  <u>See</u> Cal. Lab. Code § 226.7(c)(*emphasis*

2  *added*).

3         1.    <u>**Hillstone Provided Plaintiff with all Required Meal Periods**</u>
             <u>**or Paid Her an Additional Hour Of Pay as Required Under**</u>
4             <u>**Section 226.7**</u>

5         As discussed above, Labor Code Section 226.7 requires an employer to

6  provide an employee with a meal period as set forth in Labor Code Section 512 or

7  pay the employee an additional hour of pay at the employee's regular rate of

8  compensation.  <u>See</u> Cal. Lab. Code § 226.7.  Here, the evidence clearly shows that

9  Hillstone went above and beyond in complying with this requirement.

10        As an initial matter, Hillstone added a step to its clock-out procedure wherein

11 an employee is prompted to attest under penalty of perjury whether he or she

12 received the meal period required under California law.  (Fact 19.)  If an employee

13 responds "no" to the attestation, then Hillstone assesses whether the employee was

14 entitled to a meal period and if so, pays the employee an additional hour of pay.

15 (Fact 20.)  At her deposition, Plaintiff acknowledged responding "yes" to the

16 attestation prior to clocking-out of her shift.  (Fact 21.)  Plaintiff's timekeeping

17 records show that she did in fact take a 30-minute off-duty meal period on numerous

18 occasions.  (Fact 22.)  In addition her payroll records, confirm that throughout her

19 employment, she received over $1,700.00 in meal period premiums.  (Fact 23.)

20        Despite Hillstone's unequivocal compliance with Labor Code Section 226.7,

21 Plaintiff contends that Hillstone violated the law because it paid the additional hour

22 of pay at Plaintiff's basic hourly rate rather than at her "regular rate of pay."

23 Plaintiff's contention is absolutely baseless and attempts to impose a new and

24 unique requirement on Hillstone that the Legislature never intended.  Section 226.7

25 requires employers to pay an additional hour of pay at the employee's "regular rate

26 of *compensation*" not the "regular rate of pay."  <u>See</u> Cal. Lab. Code § 226.7; IWC

27 Wage Order 5-2001.  As discussed above, the "regular rate of pay" is a legally

28 defined term under the FLSA.  The legislature was well aware of this fact and its

-15

meaning when it drafted Labor Code Section 226.7.  If the legislature intended the additional hour of pay to be paid at the regular rate of pay, as legally defined, it could have just as easily written regular rate of pay, instead of regular rate of compensation.  Notably, the wage order refers to the "regular rate of pay" 18 different times and only to the "regular rate of compensation" two times.  It is significant that the only two instances when the wage order refers to the regular rate of compensation is in connection with the employer's payment of the additional hour of pay for failure to provide a required meal or rest period.  The People v. Guevara, 132 Cal. App. 3d 193 (1982) (holding that when the legislature has used two different words it is presumed that the legislature knew the distinction in the meanings between the two and used the two intending them to have a different meaning and effect).  Again, the Court should deny Plaintiff's attempts to create new law, and new liability, here.

## 2. On Duty Meal Period Provision did Not Invalidate Plaintiff's Meal Period Waiver

The mere existence of an on-duty meal period provision in the same document as a meal period waiver that waived the first meal period if an employee worked over five hours but less than six hours did not invalidate the meal period waiver.  A meal period waiver is completely independent of an on duty meal period provision, an obvious distinction that Plaintiff conveniently ignores.

Plaintiff's argument that an on-duty meal period agreement invalidates a meal period waiver is simply devoid of merit and ultimately demonstrates a lack of understanding of the legal concepts at issue.  The two concepts are entirely distinct.  An on-duty meal period agreement, whereby an employee may enter into a written agreement with his employer for an on-duty meal period that is counted as time worked is wholly separate from a meal period waiver.  IWC Wage Order 5, Section 11(A).  The law requires that an on-duty meal period agreement be in writing, but imposes no such obligation on a meal period waiver.  Id.  Notably, because an on-

1   duty meal period is <u>a type of meal period</u> (i.e., an on-the-clock, paid meal period),

2   the on-duty meal period agreement is <u>not</u> a waiver.  See <u>id.</u> ("Unless the employee is

3   relieved of all duty during a 30 minute meal period, the meal period shall be

4   considered an 'on duty' meal period and counted as time worked."); <u>see</u> <u>also</u>

5   <u>McFarland v. Guardsmark LLC</u>, 538 F. Supp. 2d 1209 (N.D. Cal. 2008), <u>aff'd</u>, 588

6   F.3d 1236 (9th Cir. 2009) (the court explained that agreements for on-duty meal

7   periods involved a type of meal period, and therefore they do not represent waivers).

8   Accordingly, Plaintiff's contention that because Hillstone obtained written consent

9   from its employees regarding on-duty meal periods and meal period waivers on the

10  same document, the on-duty meal period provision invalidates the meal period

11  waiver is illogical, and fails as a matter of law.

12      Notably, Hillstone never enforced the on duty meal period waiver and

13  Plaintiff has provided no evidence to the contrary.  Based on the facts here,

14  summary judgment on this issue is warranted.

### 3.   Provision Requiring Plaintiff to Provide One Day's Written Notice of Revocation of Meal Period Waiver Did Not Invalidate Meal Period Waiver

17      The inclusion of a provision that requires an employee to provide one day's

18  written notice of revocation of a meal period waiver does not automatically

19  invalidate the meal period waiver.  First, the wage order which provides for the

20  mutual waiver of meal periods does not even require the waiver be in writing.  IWC

21  Wage Order 5, Section 11(A).  It also does not state that the employee has to be able

22  to revoke the waiver at any time, as explicitly stated in connection with on-duty

23  meal period agreements.  <u>Id</u>.  As such, there is no legal basis for Plaintiff's argument

24  that the notice provision invalidates the written meal period waiver.   Plaintiff

25  plainly misreads the statute, and confuses the requirements of a valid on-duty meal

26  period with the different requirements of a valid meal period waiver.  It is just that

27  simple.

28

1   The only requirement for the meal period waiver is that the waiver be mutual.

2   That's it.  By signing the meal period waiver, including the provision regarding one

3   day's written notice of revocation, Plaintiff voluntarily agreed to waive her meal

4   periods if she worked over five hours but less than six hours or over 10 hours but

5   less than 12 and had not waived her first meal period, until the point when she

6   revoked the waiver by providing the agreed upon written notice.  (Fact 18.)  There is

7   nothing in the law which prevents her from agreeing to provide one day's written

8   notice of revocation.  As such, Plaintiff's contention that the notice requirement

9   invalidates the waiver reads into the statute a requirement which does not exist and

10  is, therefore, legally baseless.

11   Further, Plaintiff's claim is factually baseless as well since she conceded that

12  she never tried to revoke the meal period waiver, so she has no standing to pursue

13  this claim.  (Fact 17.)  Based on the above, summary judgment should be granted on

14  this issue.

15   **D.    Hillstone Is Entitled to Summary Judgment as to Plaintiff's**

16        **Waiting Time Penalties Claim Because She Lacks Evidence That**
        **Hillstone Willfully Failed to Pay Her All Wages Owed on Her**
        **Last Day of Employment**

17

18   Under Labor Code Section 203, when an employer willfully fails to pay a

19  terminated employee all wages owed within the time limits of Labor Code Section

20  201 or 202, then the employer shall owe "waiting time penalties" in the amount of a

21  day's pay for each day that payment is late, up to a maximum of 30 days.  See

22  *Mamika v. Barca*, 68 Cal. App 4th 487, 491-493 (1998).  However, an employer has

23  a complete defense to these penalties if it reasonably believed that no wages were

24  due at the time of termination.  Smith v. Rae-Venter Law Group, 29 Cal. 4th 345,

25  354 n.3 (2002) ("[A] good faith dispute that any wages are due will preclude

26  imposition of waiting time penalties under Section 203.").

27   Here, the evidence is undisputed that Plaintiff received her final paycheck on

28  her last date of employment.  (Fact 65.)  Her final paycheck included all wages

-18

owed to her at that time.  (Fact 65-66.)  To the extent that Plaintiff is owed any wages based on a finding in this action, Hillstone has a good faith dispute regarding the payment of such wages.  (Fact 66.)  Tino Ciambriello has submitted an uncontradicted declaration that Hillstone believed it had paid Plaintiff for all the wages she was owed on her last day of employment.  (Fact 66.)  Because there is no evidence either that Plaintiff was owed additional wages or that Hillstone was unreasonable in believing that Plaintiff was owed no further wages, Hillstone is entitled to summary judgment on Plaintiff's claim for waiting time penalties.

### E.   Plaintiff's Claims For PAGA Penalties Are Legally Defective Because Plaintiff Failed to Exhaust Her Administrative Remedies

#### 1.   Plaintiff's PAGA Claim Was Filed Prior To The Expiration Of The Statutorily-Mandated Exhaustion Period

The PAGA allows for an "aggrieved employee" to bring a claim for civil penalties on behalf of other "aggrieved employees" based on violations of various sections of the California Labor Code only <u>after</u> the plaintiff completes the exhaustion requirements set forth in the statute.  <u>See</u> Cal. Lab. Code, §§ 2699(a) and 2699.3.  Before a plaintiff may commence a civil action under the PAGA, the plaintiff must give "written notice… to the LWDA and the employer of the specific provision of this code alleged to have been violated, including the facts and theories to support the alleged violation."  <u>Caliber Bodyworks, Inc. v. Superior Court</u>, 134 Cal.App.4th 365, 376 (2005); Cal. Lab. Code § 2699.3(a).  The PAGA's exhaustion requirements exist to allow the LWDA "to act first on more 'serious' violations such as wage and hour violations and give employers an opportunity to cure less serious violations."  <u>Caliber Bodyworks</u>, 134 Cal.App.4th at 375; <u>see also</u> <u>Ovieda v. Sodexo Operations, LLC</u>, 2013 U.S. Dist. LEXIS 99293 at *7 (C.D. Cal. 2013) (the "PAGA sets forth an administrative exhaustion <u>requirement</u> to give the LWDA the initial opportunity to investigate and cite employers for Labor Code violations.")  (Internal punctuation omitted for clarity.)

The PAGA states:

(a) A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section 2699 alleging a violation of any provision listed in Section 2699.5 shall commence only after the following requirements have been met:

(1) The aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.

(2) (A) The agency shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 30 calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within 33 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to Section 2699.

See Cal. Lab. Code § 2699.3(a)(1) and (2). Where the plaintiff fails to satisfy the PAGA's "prefiling notice and exhaustion requirements, [he is] not entitled to pursue…" a PAGA cause of action. Caliber Bodyworks, 134 Cal.App.4th at 383 (emphasis added).

Here, instead of waiting the statutorily-required 33 calendar days before "commenc[ing] her civil action" under the PAGA, Plaintiff prematurely filed her PAGA claims only one day after sending her PAGA exhaustion letter to the LWDA. (See Defendant's Request for Judicial Notice ("RJN"), Exh. 2; Facts 67-68, 70.) Thus, Plaintiff filed her lawsuit before the expiration of 33 days or receipt of notice from the LWDA, thereby destroying the efficacy and purpose of the statutorily-required notice period which renders the PAGA claim procedurally defective as a matter of law. Accordingly, Plaintiff's Ninth Cause of Action is subject to summary judgment in Hillstone's favor.

### 2. Plaintiff's Letter To The LWDA Also Lacks The Requisite "Facts and Theories" To Pass Statutory Muster

Indeed, like the 33-day notice provision, the PAGA statute also requires the plaintiff's exhaustion letter to include "the facts and theories to support the alleged violation." See Cal. Lab. Code § 2699.3(a)(1). Here, Plaintiff's LWDA letter is substantively devoid of specific facts that "describe the who, when, how, how often, where or why of the purported Labor Code violations." Archila v. KFC U.S. Properties, Inc., 420 Fed.Appx. 667, 669 (9th Cir. 2011); Soto v. Castlerock Farming & Transp., Inc., 2012 U.S.Dist.LEXIS 53109 at *23 (E.D.Cal. 2012) (dismissing PAGA claim due to a failure to exhaust and finding that "the Ninth Circuit requires an exceedingly detailed level of specificity for [the PAGA's exhaustion requirements] to be satisfied"). Notably, Plaintiff's claims have continued to evolve. Indeed, new theories of recovery have been asserted since the Plaintiff's July 2014 deposition almost a year from the date she submitted her letter. While Plaintiff's letter contains numerous legal conclusions and some factual generalities, its failure to provide specifics that describe the "who, when, how, how often, where or why of the purported Labor Code violations" renders Plaintiff's PAGA claim subject to summary judgment on that independent basis.

### 3. Plaintiff's Derivative PAGA And UCL Claims Are Subject To Partial Summary Judgment

Even assuming that Plaintiff's entire PAGA claim does not fail on procedural exhaustion grounds, the PAGA and UCL claims fail inasmuch as they attach to any statutory Labor Code claims that do not survive the instant motion. "Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail." Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1147 (2011). Partial summary judgment should be granted accordingly.

**F.    Claims Plaintiff Agreed to Dismiss**

In the Local Rule 7-3 meet and confer conference between counsel, Plaintiff agreed to dismiss the following three claims: (1) her First and Second Claims for Failure to Pay Overtime Wages and FLSA Violations based on discounted meals; (2) her Third Claim for Rest Period Violations; and (3) her Seventh Claim for Failure to Reimburse Employees for Necessary Business Expenditures based on Defendant's alleged uniform requirement.  Accordingly, Hillstone has not moved for summary judgment on these claims but requests that the Court approve the dismissal of same.

**IV.    CONCLUSION**

As set forth above, Hillstone respectfully requests that the Court not allow Plaintiff to create new theories of liability that have no basis in fact or law here.  For each and all of the reasons discussed above, Hillstone respectfully requests that the Court grant its motion for partial summary judgment in its entirety.

Dated:  August 21, 2014          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                 By     _/s/  Greg S. Labate_
                                        GREG S. LABATE
                                        MATTHEW M. SONNE
                                        LISA M. HARRIS

                                        Attorneys for Defendant
                                 HILLSTONE RESTAURANT GROUP, INC.