**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
2274 E. Maple Avenue
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

**BURROWS LAW FIRM**
Christopher L. Burrows (SBN 222301)
cburrows@cburrowslaw.com
8383 Wilshire Boulevard, Suite 634
Beverly Hills, California 90211
Tel: (310) 526-9998
Fax: (424) 644-2446

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIA BRADESCU, STEVEN LUMINELLI, and VANESSA TAMAYO, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HILLSTONE RESTAURANT GROUP, INC., a Delaware Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 8:13-cv-01289-GW(RZx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS**<br><br>Judge:      Hon. George H. Wu<br>Date:        June 27, 2016<br>Time:       8:30 a.m.<br>Courtroom: 10 |

NOTICE IS HEREBY GIVEN that on Monday, June 27, 2016 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 10 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, before the Honorable George H. Wu, Plaintiffs and Class Representatives Maia Bradescu, Steven Luminelli, and Vanessa Tamayo ("Plaintiffs") and Class Counsel Paul K. Haines and Fletcher W. Schmidt of Haines Law Group, APC and Christopher L. Burrows of Burrows Law Firm ("Class Counsel") will, and hereby do, move this Court for an order awarding attorneys' fees, costs, and class representative incentive payments.

Pursuant to the proposed class action settlement agreement, Plaintiffs and Class Counsel seek an award of attorneys' fees of $233,100, or 33.3% of the Maximum Settlement Amount; an award of $38,911.31 for reimbursement of actual litigation costs; and incentive payments of $2,000 each to Plaintiffs Luminelli and Tamayo and $5,000 to Plaintiff Bradescu, as compensation for their roles in bringing and prosecuting this action and assisting Class Counsel.

Plaintiffs will file their Motion for Final Approval on May 30, 2016, pursuant to the Court's February 23, 2016 Order Granting Preliminary Approval. This Motion for Class Counsel's Attorneys' Fees, Costs, and Incentive Payments is filed prior to the close of the opt-out and objection deadlines, and before the filing of the Motion for Final Approval, pursuant to Federal Rule of Civil Procedure 23(h) and *In re: Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

///
///
///
///

NOTICE OF MOTION & MOTION FOR FEES, COSTS, & INCENTIVE PAYMENTS

1         This Motion is based upon the attached supporting Memorandum of Points

2    and Authorities, the supporting Declarations of Paul K. Haines, Fletcher W.

3    Schmidt, Christopher L. Burrows, Maia Bradescu, Steven Luminelli, Vanessa

4    Tamayo, and Elizabeth DiTirro of ILYM Group, Inc., all exhibits attached thereto,

5    and the pleadings, records, and files in this action.

6                                                Respectfully submitted,

7    Dated:  May 13, 2016                        HAINES LAW GROUP, APC

8

9                            By:      /s/ Paul K. Haines   

10                                   Paul K. Haines, Esq.

11                                   Attorneys for Plaintiffs, the Classes and

                                Aggrieved Employees

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION & MOTION FOR FEES, COSTS, & INCENTIVE PAYMENTS

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................... 1

II. PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT ............... 2

    A. Procedural History and Discovery Completed ........................................ 2

        1. Initial Pleadings and Conference of Counsel ................................... 2

        2. Early Mediation and Extensive Informal Discovery....................... 2

        3. Motions for Class and Conditional Certification, Summary
           Judgment, Related *Ex Parte* Applications and Discovery ............. 3

        4. First Amended Complaint, Motion to Dismiss, and Second and
           Third Amended Complaints ........................................................... 5

        5. Renewed Settlement Discussions and Eventual Settlement .......... 5

        6. Preliminary Approval of the Settlement ......................................... 6

    B. This Class Action Settlement Results in Significant Monetary
        Settlement Payments Given the Litigation Risks Involved...................... 7

III. THE COURT SHOULD APPROVE THE FEE AWARD .............................. 8

    A. The Attorney Fee Award Is Warranted Under California Law............... 8

    B. The Requested 33.3% Attorney Fee Award is Justified........................ 11

        1. Class Counsel's Lodestar Far Exceeds the Fees Requested ......... 11

           a. The Hours Expended on this Litigation are Reasonable..... 12

           b. The Requested Hourly Rates are Reasonable.................... 14

        2. Class Counsel Obtained a Substantial Recovery for the Class ..... 16

        3. Class Counsel's Efforts Support the Requested Fee Award......... 19

        4. Class Counsel's Experience and Skill Support the Fee Award .... 20

        5. The Complexity of the Issues Also Supports the Fee Award ....... 20

        6. The Risk of Non-Payment Existed At All Times ......................... 21

        7. The Reaction of the Settlement Class Is Positive ........................ 22

IV. PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE.............. 22

V. THE INCENTIVE PAYMENTS SHOULD BE APPROVED ....................... 23

i

VI. CONCLUSION.................................................................................................. 25

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

# TABLE OF AUTHORITIES

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ...................................................... 9, 21

*Blum v. Stenson*
  465 U.S. 886 (1984) ........................................................................................ 15

*Chalmers v. City of Los Angeles*
  796 F.2d 1205 (9th Cir. 1986) ...................................................................... 14

*City of Detroit v. Grinnel Corp.*
  495 F.2d 448 (2nd Cir. 1974) ........................................................................ 12

*Craft v. County of San Bernardino*
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................ 10

*Fischell v. Equitable Life Assur. Society of U.S.*
  307 F.3d 997 (9th Cir. 2002) ......................................................................... 11

*Harris v. Marhoefer*
  24 F.3d 16 (9th Cir. 1994) ............................................................................. 22

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) .................................................................................. 12, 13

*In re Bluetooth Headset Products Liability Litig.*
  654 F.3d 935 (9th Cir. 2011) ........................................................................... 9

*In re Immune Response Securities Litigation*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 22

*In re Nucorp Energy, Inc.*
  764 F.2d 655 (9th Cir. 1985) ......................................................................... 13

*Ingram v. Oroudjian*
  647 F.3d 925 (9th Cir. 2011) ......................................................................... 14

*Jordan v. Multnomah County*
  815 F.2d 1258 (9th Cir. 1987) ....................................................................... 10

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

*Kasten v. Saint-Gobain Performance Plastics Corp.*
    131 S. Ct. 1325 (2011)................................................................. 23

*Leyva v. Medline Industries, Inc.*
    716 F.3d 510 (9th Cir. 2013) ...................................................... 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) .................................................... 19

*Moore v. Jas H. Matthews & Co.*
    682 F.2d 830 (9th Cir. 1982) ...................................................... 13

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008) .................................................... 14

*Oviatt By and Through Waugh v. Pearce*
    954 F.2d 1470 (9th Cir. 1992) .................................................... 11

*Parkinson v. Hyundai Motor Am.*
    796 F.Supp.2d 1160 (C.D. Cal. 2010) ........................................ 15

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000) .................................................... 10

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009) ...................................................... 24

*Schwarz v. Sec'y of Health & Human Services*
    73 F.3d 895 (9th Cir. 1995) ........................................................ 14

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*
    460 F.3d 1253 (9th Cir. 2006) .................................................... 22

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ........................................... 9, 10, 11

*Wooldridge v. Marlene Industries Corp.*
    898 F.2d 1169 (6th Cir. 1990) .................................................... 13

iv

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

**State Cases**

*21st Century Ins. Co. v. Sup. Ct.*

    47 Cal.4th 511 (2009) ...................................................................... 9

*Armenta v. Osmose, Inc.*

    135 Cal.App.4th 314 (2005) ......................................................... 19

*Baggett v. Gates*

    32 Cal.3d 128 (1982) ...................................................................... 9

*Chavez v. Netflix, Inc.*

    162 Cal.App.4th 43 (2008) ........................................................... 10

*Estrada v. FedEx Ground Package System, Inc.*

    154 Cal.App.4th 1 (2007) ............................................................... 9

*Gentry v. Sup. Ct.*

    42 Cal.4th 443 (2007) .................................................................. 23

*Graham v. DaimlerChrysler Corp.*

    34 Cal.4th 553 (2004) .................................................................. 21

*Ketchum v. Moses*

    24 Cal.4th 1122 (2001) ................................................................ 22

*Ling v. P.F. Chang's China Bistro, Inc.*

    245 Cal.App.4th 1242 (2016) ...................................................... 17

*Press v. Lucky Stores*

    34 Cal.3d 311 (1983) ...................................................................... 8

*Pressler v. Donald L. Bren Co.*

    32 Cal.3d 831 (1982) .................................................................... 19

*Serrano v. Priest*

    20 Cal.3d 25 (1977) ...................................................................... 12

**Federal Statutes and Rules**

Fed. R. Civ. Proc. 23(h) ............................................................................ 8

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

29 U.S.C. 216(b) ................................................................................. 8

**State Statutes and Rules**

Cal. Labor Code § 90.5(a) .................................................................. 9

Cal. Labor Code § 1194 ..................................................................... 8

**Unpublished Cases**

*Alvarado v. Nederend*
    2011 WL 90228 (E.D.Cal. 2011) ............................................ 25

*Ashker v. Sayre*
    2011 WL 825713 (N.D. Cal. March 7, 2011) ........................... 22

*Barbosa v. Cargill Meat Solutions Corp.*
    2013 WL 3340939 (E.D. Cal. July 2, 2013) ............................. 21

*Bond v. Ferguson Enterprises, Inc.*
    2011 WL 2648879 (E.D. Cal. 2011) .......................................... 16

*Castro v. UPS Ground Freight, Inc.*
    Case No. CV 08-4898 ODW (CWx) (C.D. Cal. September 10, 2009) ....... 15

*Charlebois v. Angels Baseball LP*
    Case No. SACV 10-0853 DOC (ANx)
    2012 WL 2449849 (C.D. Cal. May 30, 2012) ........................... 16

*Cicero v. DirecTV, Inc.*
    2010 WL 2991486 (C.D. Cal. 2010) .......................................... 10

*Fernandez v. Victoria Secret Stores, LLC*
    2008 WL 8150856 (C.D. Cal. 2008) ........................... 12, 13, 16, 20

*Gonzalez v. USF Reddaway, Inc.*
    Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012) ............. 15

*Knight v. Red Door Salons, Inc.*
    2009 WL 248367 (N.D. Cal. 2009) ............................................ 10

*McPhail v. First Command Fin. Planning, Inc.*

    2009 WL 83984 (S.D. Cal. 2009)...............................................................22

*Murillo v. Pacific Gas & Elec. Co.*

    Case No. CIV 2:08-1974 WBS GGH

    2010 WL 2889728 (E.D. Cal. July 21, 2010)...............................................21

*Plows v. Rockwell Collins, Inc.*

    Case No. SACV 10-1936 DOC (MANx) (C.D. Cal. August 6, 2012) .......16

*Ross v. U.S. Bank Nat'l Ass'n*

    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)..............................................25

*Schiller v. David's Bridal, Inc.*

    2012 WL 2117001 (E.D. Cal. June 11, 2012)...............................................24

*Singer v. Becton Dickinson and Co.*

    Case No. 08-CV-821-IEG (BLM) (S.D. Cal. 2009) ..................................25

*Sorenson v. PetSmart, Inc.*

    Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008)......18

*Thieriot v. Celtic Ins. Co.*

    2011 WL 1522385 (N.D. Cal. 2011).....................................................22, 25

*Williams v. Centerplate, Inc.*

    2013 WL 4525428 (S.D. Cal. August 26, 2013).........................................18

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On February 23, 2016, this Court granted preliminary approval of this proposed class, collective and representative action settlement, as embodied in the Joint Stipulation for Collective Action and Class Action Settlement ("Settlement Agreement" or "Settlement").  Now before the Court is Plaintiffs' motion for an award of attorneys' fees, costs, and incentive payments.  Pursuant to the Settlement Agreement, Class Counsel seeks an award of attorney's fees of $233,100, representing 33.3% of the Maximum Settlement Amount ("MSA") of $700,000.00, and reimbursement for actual costs of $38,911.31.  Plaintiffs also request that the Court approve their request for incentive payments based on their efforts in litigating this action and assisting Class Counsel, their release of <u>all</u> known and unknown claims (which is a much broader release than any other Class Members), and the financial and reputational risk that they assumed to vindicate the rights of their fellow settlement Class Members.  Notably, not a single Class Member has filed an objection to the requested fees, costs, or incentive payments.

Class Counsel respectfully request that the Court approve the requested 33.3% fee award, which although exceeds the 25% benchmark, is justified based on the following:  (1) Class Counsel's lodestar, which significantly exceeds the amount of fees requested (if approved, the fee award would equal less than 46% of Class Counsel's lodestar); (2) the substantial monetary recovery obtained for the Settlement Classes, which, as described below, is on par with a prior settlement approved by this Court in 2011 against the same Defendant, Hillstone Restaurant Group ("Defendant" or "Hillstone") in the matter of *Mary Carney v. Hillstone Restaurant Group, et al.,* Case No. 2:10-cv-2988 GW(RZx); (3) Class Counsel's efforts in zealously prosecuting this case over more than two years of hotly-contested litigation; (4) Class Counsel's skill and considerable wage and hour class action experience; (5) the novelty and complexity of the issues

1

regarding the claims for unpaid overtime, and other wage and hour claims; (6) the significant risk of non-payment due to Class Counsel's undertaking this matter on a purely contingent basis; and (7) the lack of any objections to the settlement.

## II.   PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT

### A.   Procedural History and Discovery Completed

#### 1.   Initial Pleadings and Conference of Counsel

On August 22, 2013, Plaintiff Bradescu filed a class, collective and representative action complaint against Defendant Hillstone in the United States District Court for the Central District of California, before the Honorable Michael W. Fitzgerald, alleging nine claims including overtime violations and derivative wage statement and PAGA penalties.  Dkt. No. 1.  On November 5, 2013, Hillstone filed its Answer. Dkt. No. 6.  On November 13, 2013, the action was transferred to this Court, as it was found to be related to the matter entitled *Mary Carney v. Hillstone Restaurant Group., et al.*, Case No. 2:10-cv-2988 GW(RZx), a prior wage and hour class action brought against Hillstone alleging many of the same claims alleged in this case.  *See* Dkt. No. 8, 12.  The *Carney* action was globally resolved, and the claims that were released in *Carney* were released through April 5, 2011.  As such, Hillstone argued that certification of any claims alleged by Plaintiffs in this action could only commence as of April 5, 2011, given the release date of the *Carney* settlement.  On November 18, 2013, the parties conducted a Rule 26(f) conference of counsel, and on December 16, 2013, the parties filed their Joint Rule 26(f) Report. *See* Dkt. No. 13.

#### 2.   Early Mediation and Extensive Informal Discovery

On April 10, 2014 the parties attended private mediation with Jeffrey Krivis, one of the preeminent wage and hour mediators in the country.  *See* Declaration of Paul K. Haines ("Haines Decl."), ¶ 10. In anticipation of mediation, the parties exchanged substantial timekeeping and payroll data for the members of the putative classes.  *Id.*  Plaintiffs' counsel submitted a detailed mediation brief,

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

and retained an expert with a Ph.D. in economics to analyze the data and create potential damages models.  *Id.* The parties were unable to resolve the action at the mediation with Mr. Krivis.  *See* Dkt. No. 17.

### 3. Motions for Class and Conditional Certification, Summary Judgment, Related *Ex Parte* Applications and Discovery

Following the failed mediation, Plaintiff Bradescu filed her Motion for Class and Conditional Certification on August 8, 2014.  Dkt. No. 21.  In addition to opposing the Motion for Class and Conditional Certification, Hillstone filed a Motion for Partial Summary Judgment ("MSJ") on August 21, 2014, as to Plaintiff Bradescu's individual claims, and set it for hearing prior the pre-scheduled class certification hearing date.  *See* Dkt. Nos. 22-25 & 33-39.  On August 21, 2014, Plaintiff Bradescu brought an *ex parte* application to continue the MSJ hearing until after the hearing on her Class Certification Motion. Dkt. No. 26.  That *ex parte* application was denied. Dkt. No. 32.

On August 28, 2014, Plaintiff Bradescu filed her opposition to the MSJ, including a Request for Judicial Notice and several objections to Hillstone's evidence.  Dkt. No. 30.  On September 4, 2014, Hillstone filed its Reply in support of MSJ, including several objections to Plaintiff's Request for Judicial Notice and to Plaintiff's counsel's declaration in support of the opposition. Dkt. Nos. 41-44, 46.  Plaintiff Bradescu filed responses to those objections, and filed additional objections to Hillstone's Reply evidence.  Dkt. Nos. 55-57.

On September 4, 2014, Plaintiff Bradescu brought another *ex parte* application, to continue the hearing on her Motion for Class Certification and the filing date for her Reply brief, and for permission to exceed 10 depositions. Dkt. No. 47.  That *ex parte* application was granted.  Dkt. No. 54.

On September 18, 2014, the Court held a hearing on Hillstone's Motion for Partial Summary Judgment, and ordered supplemental briefing by the parties, with the motion hearing continued until October 10, 2014. *See* Dkt. No. 60.  Plaintiff

filed her supplemental brief on September 26, 2014 (Dkt. No. 68), Hillstone filed its response on October 3, 2014 (Dkt. Nos. 70-72), and Plaintiff filed objections to Hillstone's response on October 7, 2014 (Dkt. No. 77).  On October 10, 2014, the Court heard Hillstone's Motion for Partial Summary Judgment, which was granted in part and denied in part. *See* Dkt. No. 78.

Concurrently, Plaintiff Bradescu filed her Reply in support of her Motion for Class and Conditional Certification, as well as several objections to Hillstone's evidence in support of its opposition. Dkt. Nos. 62-67.   On October 10, 2014, the Court held a hearing on Plaintiff's Motion for Class and Conditional Certification, and ordered supplemental briefing by the parties, with the hearing continued to November 24, 2014. *See* Dkt. Nos. 79 & 88.  Plaintiff filed her supplemental brief and evidence on October 24, 2014 (Dkt. No. 85), and Hillstone filed its response on November 7, 2014 (Dkt. No. 86). On November 24, 2014 the Court held a further hearing on Plaintiff's Motion and issued a tentative order denying Plaintiff's Motion for Conditional Certification without prejudice and finding that Plaintiff had presented sufficient evidence to meet the first step in the conditional certification process.  The Court continued the hearing on the Motion for Class and Conditional Certification to December 11, 2014.  *See* Dkt. No. 91.

On December 11, 2014, the Court denied Plaintiff's Motion for Class Certification without prejudice, based on the parties' stipulation to add two new class representatives through a First Amended Complaint ("FAC"), and to permit some additional limited discovery, following which Plaintiffs would meet and confer with Hillstone and would refile their Motion for Class and Conditional Certification.  *See* Dkt. Nos. 95, 99, 102.

In connection with these aforementioned motions, the parties engaged in substantial discovery, which included Plaintiff's deposing three different Rule 30(b)(6) witness, a Hillstone manager, four putative class members who submitted declarations on behalf of Hillstone in opposition to the certification motion, in

addition to deposing Hillstone's retained expert witness.  *See* Haines Decl., ¶ 11.
Plaintiff Bradescu also retained her own expert (at a cost of more than $18,000)
who submitted a written report on behalf of Plaintiff in support of her Motion for
Class and Conditional Certification.  *See* Dkt. No. 21.  Hillstone also conducted
substantial discovery, deposing Plaintiff Bradescu on two separate occasions and
deposing Plaintiff Tamayo, in addition to deposing three putative class members
who submitted declarations in support of the Motion for Class and Conditional
Certification. Plaintiffs' counsel defended each of those depositions.  *See* Haines
Decl., ¶ 11.

In addition, during the pendency of the Class Certification Motion and the
MSJ, Plaintiff opposed third-party NCR Corp.'s Motion to Quash or Modify
Deposition Subpoena. (*See* Dkt. Nos. 58-59, 69, 76.)  The Motion was eventually
taken off-calendar pursuant to a stipulation of the parties. Dkt. Nos. 100-101.

### 4.  First Amended Complaint, Motion to Dismiss, and Second and Third Amended Complaints

On December 12, 2014, Plaintiffs filed their First Amended Complaint
("FAC").  *See* Dkt. No. 103.  On January 12, 2015, Hillstone filed a Motion to
Dismiss the FAC or for a more definitive statement.  *See* Dkt. Nos. 112-113.
Plaintiffs filed an opposition on January 20, 2015.  *See* Dkt. No. 114.  The Court
granted Hillstone's Motion to Dismiss with leave to amend on February 26, 2015.
*See* Dkt. No. 119.  On March 9, 2015, Plaintiffs filed a Second Amended
Complaint.  *See* Dkt. No. 120.  On April 27, 2015, the Parties stipulated to the
filing of a Third Amended Complaint, which Plaintiffs filed on May 4, 2015. *See*
Dkt. Nos. 130-132.

### 5.  Renewed Settlement Discussions and Eventual Settlement

In late spring of 2015, the parties met and conferred regarding Plaintiffs'
intended renewed Motion for Class and Conditional Certification and Hillstone's
anticipated further Motion for Summary Judgment/Adjudication, and Plaintiffs'

counsel spent considerable time preparing a renewed Motion for Class and Conditional Certification.  Haines Decl., ¶ 12.

In addition, following the filing of the Third Amended Complaint, and prior to the filing of Plaintiffs' renewed Motion for Class and Conditional Certification and Hillstone's anticipated Motion for Summary Judgment/Adjudication, the parties renewed settlement discussions through mediator Jeffrey Krivis.  *Id.* These settlement discussions spanned several weeks, and included extensive conferences between Plaintiffs' counsel, Hillstone's counsel, Mr. Krivis, and the parties' respective experts regarding the analysis of the data provided by Hillstone in connection with mediation.  *Id.*  These discussions finally culminated in a global resolution of the entire case.  *Id*.  After months of working on an extensive Memorandum of Understanding, the parties memorialized the terms of the settlement in July 2015.  *Id*.  In September 2015, the parties entered into a long form settlement agreement and agreed on the form of a class notice. *Id*.

### 6.  <u>Preliminary Approval of the Settlement</u>

Plaintiffs moved this Court for preliminary approval on October 15, 2015. Dkt. No. 133.  This Court heard Plaintiffs' Motion on December 10, 2015, and requested that Plaintiffs address certain points in the settlement.  *Id.*  On February 1, 2016, Plaintiffs submitted the requested supplemental briefing, as well as a revised settlement, notice, and opt-out form.  *See* Dkt. No. 136.

At the February 8, 2016 hearing, the Court noted that its concerns had been addressed by Plaintiffs' further briefing and the revised settlement documents, and stated that it would likely grant preliminary approval.  However, the Court requested that Plaintiffs submit red-lined copies of the amended settlement documents and a revised proposed order, and ordered that the parties return for a status conference on February 18, 2016.  *See* Dkt. No. 137.  Plaintiffs submitted the requested documents on February 12, 2016.  *See* Dkt. No. 138.

///

At the February 18, 2016 status conference, the Court issued a tentative ruling granting Plaintiffs' Motion for Preliminary Approval and requesting that Plaintiffs submit a revised proposed order and class notice. The Court adopted the tentative ruling, granted the Motion for Preliminary Approval, ordered that the revised documents be filed by February 19, 2016, and set a Final Approval hearing for June 27, 2016. *See* Dkt. No. 139. Plaintiffs filed the requested revised documents on February 19, 2016 (Dkt. No. 140), and on February 23, 2016, the Court signed the revised order (Dkt. No. 141).

After nearly three years of hard-fought litigation, Plaintiffs now present this motion to the Court for approval of Class Counsels' attorneys' fees, costs and Class Representatives' Enhancement Payments.

## B.   **This Class Action Settlement Results in Significant Monetary Settlement Payments Given the Litigation Risks Involved.**

Defendant has agreed to pay a MSA of $700,000. After deducting amounts for court-approved incentive payments to Plaintiffs, costs of settlement administration, attorneys' fees and verified litigation costs, and the PAGA payment to the LWDA, the settlement requires Defendants to pay a Net Settlement Amount ("NSA") of up to approximately $390,400.00 to the members of the Settlement Classes. In no event shall Hillstone pay the Settlement Classes less than 50% of the NSA. If the total Individual Settlement Payments would equal less than 50% of the NSA, the Claims Administrator shall proportionately increase the Individual Settlement Payment for each participating Class Member to ensure that the total of all Individual Settlement Payments combined equals 50% of the NSA. *Id.* Any unclaimed amounts above 50% of the NSA shall be the exclusive property of Hillstone. *Id. See* Dkt. No. 140-1 (Settlement Agreement) at ¶ 10.3, pp. 27-28.

The NSA will be allocated to the Settlement Classes as follows: 35% of the NSA will be allocated to all members of the FLSA Settlement Class, with each

member of the FLSA Settlement Class taking a proportional share based on their total weeks worked during the settlement period.  The remaining 65% of the NSA will be allocated to all members of the California Settlement Class, with each member eligible to receive a proportional share based on their total workweeks worked during the California settlement period.  *See id* at ¶ 10.3, pp.26-27.  Current Hillstone employees in California do not need to submit a claim to participate in the Settlement; former California employees and FLSA Settlement Class members can participate in the Settlement by submitting a claim form.  *Id.*, ¶ 9.  As of May 12, 2016, there were a total of 1,381 participating Settlement Class members, who collectively claimed over 40% of the NSA, and only 63 Settlement Class members have elected to opt-out of the settlement.  Declaration of Elizabeth DiTirro ("DiTirro Decl."), ¶¶ 11-12.  Assuming the participation rate does not change between now and the close of the opt-in period, the Settlement will yield an average payout of approximately $79.76 to participating FLSA Settlement Class members, and an average payout of $155.98 to participating California Settlement Class members. *Id.*, ¶¶ 15-16.  These settlement payments are on par with and exceed payments in other judicially-approved wage and hour class settlements.  *See* Section III.B.2, *infra*.

## III.   THE COURT SHOULD APPROVE THE FEE AWARD

### A.   The Attorney Fee Award Is Warranted Under California Law.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. Proc. 23(h).

Here, there are multiple statutory bases for Plaintiffs to seek reasonable attorney fees and costs under California and federal law.  *See* Labor Code § 1194; 29 U.S.C. 216(b); *Press v. Lucky Stores*, 34 Cal.3d 311, 317-318 (1983) ("The award of attorney fees is proper under [CCP] section 1021.5 if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public

interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate.") [internal quotations omitted].[1]

Under California law, "[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff…for the benefit of all results in the creation…of that fund, such plaintiff…may be awarded attorney's fees out of the fund." *See 21st Century Ins. Co. v. Sup. Ct.*, 47 Cal.4th 511, 520 (2009). In awarding attorney fees from a common fund, courts have discretion to employ either the percentage-of-recovery method or the lodestar method. *See In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981-982 (E.D. Cal. 2012) (applying percentage of recovery method in wage and hour action alleging violations of Labor Code and FLSA). Courts utilizing the percentage-of-the fund approach can use a lodestar as a "cross-check" on the reasonableness of the requested percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002).

In the Ninth Circuit, the typical range of reasonable attorney's fees is 20 to 33.3 percent of the total settlement value, with 25% considered a benchmark

---

[1] These factors are met here. First, the "substantial recovery" of unpaid wages furthers "the enforcement of an important right affecting the public interest" with respect to minimum labor standards concerning the payment of unpaid wages. *See*, *e.g.*, Cal. Labor Code § 90.5(a). Second, the relief obtained through the settlement confers a "significant benefit" on a "large class of persons." *See, e.g., Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 16-17 (2007). Third, as explained in detail in Section III.B.1, *infra*, Class Counsel's lodestar establishes that "the necessity and financial burden of private enforcement are such as to make the award appropriate" because the financial burden this suit placed on Plaintiffs was out of proportion to their personal stake in the case. *See Baggett v. Gates*, 32 Cal.3d 128, 144 (1982).

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

percentage. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486 at *6 (C.D. Cal. 2010) [and cases cited therein]. The percentage applied in a particular case, however, depends on the facts of each case and "in most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 at *3 (N.D. Cal. 2009); *see also Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 fn. 11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") [internal citation omitted]. Notably, "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million." *Cicero, supra,* 2010 WL 2991486 at *6.

Here, Class Counsel seek an award of 33.3% of the common fund based on (1) Class Counsel's lodestar, which far exceeds the requested fee award; (2) the substantial monetary recovery obtained for the Settlement Class; (3) Class counsel's extensive efforts in zealously pressing the class claims forward through more than two years of hotly-contested litigation; (4) Class counsel's skill and considerable wage and hour class action experience; (5) the complexity of the issues regarding the claims for miscalculation of the regular rate of pay, meal and rest period violations, and derivative penalties; (6) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; and (7) the fact that not a single class member has objected to any aspect of the proposed settlement. *See Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1116-17 (C.D. Cal. 2008); *see also Vizcaino, supra,* 290 F.3d at 1048-1050 (in assessing whether percentage requested is fair and reasonable, courts generally consider the results achieved, the risk of litigation, the skill required, the quality of work performed, the contingent nature of the fee and the financial burden, and the awards made in similar cases); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (internal citations omitted) ("[a] strong presumption exists that the

lodestar figure represents a reasonable fee."); *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1472 (9th Cir. 1992) (attorneys' fees calculated by the lodestar method are "presumptively reasonable").

## B.   The Requested 33.3% Attorney Fee Award is Justified.

### 1.   Class Counsel's Lodestar Far Exceeds the Fees Requested.

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischell v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  Although the Court is not required to conduct a lodestar cross-check, Class Counsel's lodestar also supports the requested 33.3% fee award.  In this case, Class Counsel's lodestar is approximately $510,577.50.  Below is a general summary of the hours worked by each attorney and paralegal on this case, including expected future hours:

| Name | Rate | Hours | Lodestar |
|---|---|---|---|
| Christopher L. Burrows (14th Year Attorney) | $600 | 152.8 | $91,680.00 |
| Paul K. Haines (10th Year Attorney) | $575 | 594.5 | $341,837.50 |
| Fletcher W. Schmidt (4th Year Attorney) | $375 | 176.7 | $66,262.50 |
| Paralegals | $175 | 61.7 | $10,797.50 |
| **Total Lodestar** | | | **$510,577.50** |

Therefore, the 33.3% requested fee award ($233,100) amounts to less than 46% of Class Counsel's lodestar; in other words, it reflects a ***negative*** multiplier of approximately -2.19.  *See, e.g., Vizcaino, supra,* 290 F.3d at 1051, fn. 6 (finding that <u>positive</u> multipliers ranging from 1.0 to 4.0 are frequently awarded in common fund cases, with slightly over half of the cases surveyed awarding

positive multipliers in the 1.5 to 3.0 range). Given that the requested fee award results in a significantly <u>negative</u> lodestar, the requested fee award is reasonable.

### a. <u>The Hours Expended on this Litigation are Reasonable.</u>

To determine the reasonableness of Class Counsel's requested fee award, the Court should determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Referred to as the "lodestar method," the California Supreme Court in the seminal case of *Serrano v. Priest* described it as follows:

> The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case.  Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.

*See Serrano v. Priest*, 20 Cal.3d 25, 48 n.23 (1977) (hereinafter "*Serrano III*"), citing *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 470 (2nd Cir. 1974). According to the United States Supreme Court, the Court should include in any fee award all hours which were "reasonably expended." *See Hensley*, *supra*, 461 U.S. at 433.  Concurrently filed herewith are sworn declarations from Class Counsel, Paul K. Haines, Christopher L. Burrows, and Fletcher W. Schmidt attesting to (1) the experience and qualifications of the attorneys and paralegals who worked on this case, (2) those attorneys and paralegals' customary billing rates during this case, and (3) the hours reasonably expended by those attorneys and paralegals in prosecuting this case. *See Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 at *9, fn. 35 (C.D. Cal. 2008).  As stated, Class Counsel have incurred nearly 1,000 hours of attorney and paralegal time, including expected future hours, reflecting a total lodestar of $510,577.50. *See* Haines Decl., ¶¶ 16-18; Declaration of Christopher L. Burrows ("Burrows Decl."), ¶¶ 9-11; Declaration of Fletcher W. Schmidt ("Schmidt Decl."), ¶ 7.  Although "the

lodestar cross-check can be performed with a less exhaustive cataloguing and review of counsel's hours," *see Fernandez, supra,* 2008 WL 8150856 at *14, fn. 35, Class Counsel have prepared attorney and paralegal time reports reflecting all hours spent to date working on this case.  If the Court deems it necessary, Class Counsel can make these non-redacted reports available to the Court for an *in camera* review, or alternatively can file the partially redacted records with the Court (removing any reference to the substance of attorney-client communications and/or other privileged matters, which would not be appropriate for public filing).

Class Counsel is entitled to be compensated for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *See Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *see also Hensley, supra,* 461 U.S. at 431 (the appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all the time reasonably expended on the matter").  This includes the time spent preparing this motion for attorneys' fees. *See, e.g., In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985).  As set forth in Class Counsel's concurrently-filed declarations, and in Section II above, Class Counsel performed significant work to reach this settlement now before the Court.  *See* Haines Decl., ¶¶ 16-18; Burrows Decl., ¶ 9-11.

The hours worked on this case are reasonable because Class Counsel believed the work to be "reasonably expended in pursuit of success at the point in time when the work was performed," especially in light of the extensive motion practice that was required. *See Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) ("The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved.  Rather, the standard is whether a

reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.").  Surely, an opposite standard for determining "reasonableness" would put Class Counsel in the precarious position of constantly second-guessing litigation strategy in a statutory fee case even though it would clearly be reasonable and in the best interests of the client for counsel to pursue the same litigation strategy for a fee-paying client. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, Class Counsel respectfully submit that all actions taken in connection with litigating this case were necessary.  The steps taken to resolve this matter are a result of experienced class action wage and hour employment attorneys who acted diligently on behalf of the putative classes.

### b. <u>The Requested Hourly Rates are Reasonable.</u>

To determine Class counsel's hourly rates, the Court should look to prevailing rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Chalmers v. City of Los Angele*s, 796 F.2d 1205, 1210-1211 (9th Cir. 1986).   The Court can rely on its own familiarity with the legal market in determining the prevailing rate for similar work. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  The "relevant community" is typically the community in which the district court sits. *See Schwarz v. Sec'y of Health & Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).  Here, Class Counsel's request for attorneys' fees using a lodestar cross-check is based on the following hourly rates: $600 for 14th-year attorney Christopher L. Burrows (Class of 2002), $575 for 10th-year attorney Paul K. Haines (Class of 2006), and $375 for 4th-year attorney Fletcher W. Schmidt (Class of 2012).  Class Counsel also request a billable hourly rate of $175 for all paralegals.

Class Counsel submit that these hourly rates are reasonable because they are in line with the rates at which they have previously been approved; because of

their skill, wage and hour class action experience and reputation; fee awards to other attorneys of similar experience in this District; and the Laffey Matrix. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (lodestar should be based on using hourly rates that are "the prevailing market rates in the relevant community"). "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *See Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010).

As detailed in Class Counsel's supporting declarations and the declarations submitted in support of Plaintiffs' motion for preliminary approval, Class Counsel have extensive wage and hour class action experience, having defended numerous wage and hour class actions on behalf of multi-national employers in addition to having been appointed as Class Counsel in dozens of matters in both state and federal courts. *See* Haines Decl., ¶¶ 3-7; Burrows Decl., ¶¶ 2-6, 14; Schmidt Decl., ¶¶ 3-6.

Moreover, for the last eight years, Thomson Reuters and Los Angeles Magazine have recognized Mr. Burrows in Super Lawyer magazine as a Rising Star (an honor awarded to no more than two-and-a-half percent of lawyers under the age of forty) and then a Super Lawyer in the area of employment litigation (an honor awarded to no more than five percent of attorneys in Southern California). Burrows Decl., ¶ 7.  In 2015 and 2016, Mr. Haines was also recognized as a Rising Star.  Haines Decl., ¶ 8.

Other federal courts in California, including courts in this District, have approved similar hourly rates for attorneys with similar experience as Class Counsel. *See, e.g., Gonzalez v. USF Reddaway, Inc.*, Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012) (approving hourly rate of $575 for an attorney with 10.8 years in practice in wage and hour class action settlement); *Castro v. UPS Ground Freight, Inc.*, Case No. CV 08-4898 ODW (CWx) (C.D.

Cal. September 10, 2009) (approving hourly rate of $500 5-year attorney in wage and hour class action settlement for work performed in 2008); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (in 2012, approving hourly rate of $450 for attorney with six years of experience for work performed in 2011); *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-1936 DOC (MANx) (C.D. Cal. August 6, 2012) (approving billable rate of $475 for 7-year attorney in wage and hour class action settlement for work performed in 2011).

Class Counsel's requested billable rates are also appropriate under the Laffey Matrix.  "One more general way to examine the reasonableness of hourly rates is to compare them to the Laffey Matrix, a widely recognized compilation of attorney and paralegal rate data used in the District of Columbia, frequently used in fee award cases." *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879 at *12 (E.D. Cal. 2011).  The Laffey Matrix has been used in this district.  *See Fernandez, supra,* 2008 WL 8150856 at *14 (approving Laffey Matrix as a tool for determining the lodestar, and noting that where the Laffey Matrix has been disapproved in California, it is because it produces a rate that is too low).  Per to the Laffey Matrix, for the period June 1, 2015, to May 31, 2016, the hourly rate is $180 for a paralegal, $406 for an attorney who is 4 to 7 years out of law school, $586 for an attorney who is 8 to 10 years out of law school, and $661 for an attorney who is 11 to 19 years out of law school. *See* Haines Decl., ¶ 21, Ex. B.

Accordingly, Class Counsel respectfully request that the Court approve the requested hourly rates of $600 for Christopher L. Burrows, $575 for Paul K. Haines, $375 for Fletcher W. Schmidt, and $175 for all paralegals. *See* Haines Decl., ¶¶ 20-21; Burrows Decl., ¶ 13; Schmidt Decl., ¶ 8.

### 2.  <u>Class Counsel Obtained a Substantial Recovery for the Class.</u>

Plaintiff obtained a substantial recovery for the Settlement Class in the face of significant challenges.  The Court had already once denied certification of

Plaintiffs' claims without prejudice, and although Plaintiffs believed they would be able to demonstrate that certification was appropriate through their renewed certification motion in light of the additional discovery they had obtained, no class had yet been certified.  Haines Decl., ¶ 13.  Moreover, Hillstone intended to file motions for summary judgment as to Plaintiffs Lumenelli and Tamayo, which Hillstone contended would have limited the scope of the classes that could have potentially been certified.  *Id.*

Plaintiffs' claims also faced significant challenges on the merits. For example, with respect to Plaintiffs' contention that Hillstone miscalculated the regular rate of pay by failing to include automatic gratuities in the regular rate, Plaintiffs faced obstacles in prevailing on this claim given that IRS Rev. Rule 2012-18 stated that the IRS would not begin enforcing this law until January 1, 2014, which coincided with the date that Hillstone discontinued this practice at its locations nationwide.  *Id.*, ¶ 14.  The Court also summarily adjudicated in Hillstone's favor Plaintiffs' claim that Hillstone underpaid meal period premiums as a result of its failure to correctly calculate the regular rate of pay.  *Id.*  In addition, as detailed in Plaintiffs' Motion for Preliminary Approval, based on evidence produced in discovery, it appeared that Hillstone automatically paid meal period premiums when employees did not take compliant meal periods and also had compliant rest period policies in place during the relevant time period. *Id.*

Hillstone also asserted that it possessed strong defenses to Plaintiffs' claim for waiting time penalties, since its good-faith belief that its payroll practices properly compensated all employees for all overtime compensation would preclude a finding of any "willful" violation, and its position that waiting time penalties could not be recovered based on meal or rest period premiums. *Id.,* ¶15; *see also Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016).  Defendant further argued that to the extent Plaintiffs received wage statements that were allegedly inaccurate, Plaintiffs suffered no actual damage or

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

harm as a result. Haines Decl., ¶ 15.  For these reasons, Defendant claims that it did not engage in any unfair business practices and further deny liability under the PAGA.  *Id.*  Despite these obstacles, however, Plaintiffs and Class Counsel secured a substantial recovery for the Settlement Class.

Moreover, the average settlement payment for Class members is significant (*see* pg. 8, *supra*, for estimated payment breakdown for the Settlement Classes), and is on par with similar wage and hour class action settlements in California, including a prior class action against Hillstone, which was approved by this very Court. In *Carney v. Hillstone*, Case No. 2:10-cv-02988-GW-RZ, the settlement class claimed about 42.8% of the settlement fund; here, the Settlement Class as of May 12, 2016 had claimed about 40.5% of the NSA, with almost two weeks remaining in the claims period. *See* DiTirro Decl., ¶ 11.  Likewise, in *Carney*, the average payout per participating class member was roughly $179, compared with an average payout in this case to participating California Settlement Class members of about $156.  *Id.*, ¶ 15. Moreover, given Hillstone's contention that it had since remedied any wage and hour violations alleged in the *Carney* action, the result achieved by Plaintiffs here is laudable.  *See also, Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement of meal, rest and related penalty claims approved where average class member recovery was approximately $60)*; Williams v. Centerplate, Inc.*, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of minimum wage, overtime wage, and meal and rest break class action settlement where average recovery for each class member was approximately $108).

Class Counsel have performed a valuable public service because "[p]ublic policy has long favored the full and prompt payment of wages due an employee… [w]ages are not ordinary debts….[B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of

life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *See Pressler v. Donald L. Bren Co.*, 32 Cal.3d 831, 837 (1982) (internal citations and quotations omitted).  "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005).

Given the relatively small individual amounts at issue, this settlement furthers public policy by using the class action procedure to provide redress to those individuals who would otherwise not be able to access the judicial system to recover their unpaid wages.  As the Ninth Circuit stated in *Leyva v. Medline Industries, Inc.*, "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." 716 F.3d 510, 515 (9th Cir. 2013); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

### 3.  <u>Class Counsel's Efforts Support the Requested Fee Award.</u>

As detailed above in Section II.A. and III.B.1.a., *supra*, Class Counsel has dedicated nearly 1,000 attorney hours to the successful resolution of this matter, and was continuing to press Plaintiffs' claims forward towards a renewed certification motion at the time that this resolution was reached.  Class Counsel filed a Motion for Class and Conditional Certification, opposed a Motion for Partial Summary Judgment, brought two *ex parte* applications, opposed a motion to quash, prepared for and attended a mediation, retained an expert economist at a cost of over $18,000 to analyze the data and assist in preparing potential damages models, and engaged in extensive discovery including taking and defending a total of 15 depositions and engaging in substantial written discovery.  *See,* Dkt. Nos. 21-26, 30, 32-39, 41-44, 46-47, 54-59, 60, 62-69, 70-72, 76-79, 85-86, 88, 91, 95,

99, 102, 112-114, 133, 135-140; Haines Decl., ¶¶ 10-12, 16-18.

In short, Class Counsel deployed virtually all resources that were available to their respective firms for nearly three years of litigation to prosecute this action diligently on behalf of the Settlement Class.  In doing so, Class Counsel not only expended close to 1,000 attorney hours, at the risk of obtaining no compensation whatsoever, but also expended $38,911.31 in out-of-pocket costs, which is substantial given the relatively small size of both firms designated as Class Counsel.  Further, despite the denial of certification (without prejudice) of Plaintiffs' claims, Class Counsel's efforts nonetheless resulted in a favorable class-wide resolution.

### 4.   Class Counsel's Experience and Skill Support the Fee Award.

Class Counsel possess significant wage and hour class action experience. Collectively, Class Counsel have more than two decades of plaintiff and defense-side wage and hour class action experience pertaining to claims that are at issue in the lawsuit. Haines Decl., ¶¶ 2-8; Burrows Decl., ¶¶ 2-6, 14; Schmidt Decl., ¶¶ 2-6.  Class Counsel have been appointed as class counsel in numerous other cases, and have successfully certified classes in contested motions for class and conditional certification. Haines Decl., ¶¶ 6-7; Burrows Decl., ¶¶ 13-14; Schmidt Decl., ¶¶ 5-6.   Class Counsel are respected by their colleagues, as evidenced by Mr. Burrows' recognition as a Super Lawyer and Mr. Haines' recognition as a Rising Star in the area of employment litigation among Southern California attorneys.  Burrows Decl., ¶ 7; Haines Decl., ¶ 8.  "All class counsel are qualified, experienced, and skilled attorneys," which favors the requested fee award.  *See Fernandez, supra,* 2008 WL 8150856 at *12.

### 5.   The Complexity of the Issues Also Supports the Fee Award.

This litigation involved some highly complex and unsettled legal and procedural issues, including the appropriate standards for certification of Plaintiffs' Classes, issues pertaining to what compensation should be incorporated

in employees' regular rate of pay, and the availability of waiting time penalties as derivative from unpaid meal and rest period premiums.  Class Counsel zealously navigated these issues to reach a favorable resolution for the Settlement Class.

Because of the complexity of the issues in this case, Plaintiffs submit that the requested fee award is appropriate. *See, e.g., Murillo v. Pacific Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010); *Adoma*, *supra*, 913 F. Supp. 2d at 983 ("It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts").

### 6.  <u>The Risk of Non-Payment Existed At All Times.</u>

"A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004).  Here, Class Counsel took this matter on a purely contingent basis and collectively invested nearly 1,000 hours of attorney time in litigating this matter for nearly three years without any guarantee of payment for their services. Burrows Decl., ¶¶ 9-12, 15; Haines Decl., ¶¶ 19, 22.  Not only have Class Counsel rendered their services without any compensation to date, they have also advanced all out-of-pocket litigation costs, which amount to $38,911.31.  *Id*.  Because there was a real risk that they would not be compensated for their work or reimbursed for their litigation expenses, the requested fee award is appropriate. *See Barbosa v. Cargill Meat Solutions Corp.*, 2013 WL 3340939 at *16 (E.D. Cal. July 2, 2013) ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate"); *Murillo*, *supra*, 2010 WL 2889728 at *12 ("Fee enhancements in contingency cases exists to compensate for the risk of loss inherent in such cases and create financial incentives for

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

attorneys to take cases to protect important rights and goals, such as fair labor standards"); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is only paid for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.") [internal citation omitted].

### 7.  The Reaction of the Settlement Class Is Positive.

Notice of this proposed settlement, including the amounts requested for attorney's fees, costs, and Plaintiffs' incentive awards, was mailed to 12,672 members. *See* DiTirro Decl., ¶ 8. Not a single Settlement Class member has filed an objection to the requested fee or incentive awards, and only 63 have elected to exclude themselves from the Settlement. *Id.* at ¶¶ 12-13. These facts strongly support the requested fee award. *See, e.g., Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *6 (N.D. Cal. 2011) ("The fact that no members of the 390–person class objected to the proposed 33% fee award—which was also communicated in the notice—supports an increase in the benchmark rate."); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841 at *6 (S.D. Cal. 2009) ("The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate.").

## IV.  PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE

Class Counsel and Plaintiffs also seek, and Defendant does not oppose, a request for $38,911.31 in out-of-pocket costs incurred in litigating this matter. [2]

---

[2] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *see also Ashker v. Sayre*, 2011 WL 825713 at * 3 (N.D. Cal. March 7, 2011) ("The costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-1259 (9th Cir. 2006) (legal research costs reimbursable); *In re*

MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

Haines Decl., ¶ 19. Not a single class member has filed an objection to this Settlement, including Class Counsel's request for up to $40,000 for reimbursement of verified costs. DiTirro Decl., ¶ 13; *see also* Haines Decl., ¶ 19 & Ex. A; Burrows Decl., ¶ 12 & Ex. A. Because the litigation expenses by Class Counsel were reasonably incurred, and no Class member has objected to them. Thus, the Court should grant the request for costs.

## V. THE INCENTIVE PAYMENTS SHOULD BE APPROVED

Class Representatives Maia Bradescu, Steven Luminelli, and Vanessa Tamayo request a $5,000 incentive payment for Plaintiff Bradescu and $2,000 incentive payments for Plaintiffs Luminelli and Tamayo. In *Gentry v. Sup. Ct.*, the California Supreme Court acknowledged that employees are frequently hesitant to seek legal redress for even meritorious claims, stating, "retaliation against employees for asserting statutory rights under the [California] Labor Code is widespread," and, thus, "fear of retaliation for individual suits against an employer is a justification for class certification in the area of employment litigation." *See* 42 Cal.4th 443, 460 (2007); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011) (recognizing that "fear of economic retaliation" can force employees "quietly to accept substandard conditions"). Incentive payments are therefore necessary to incentivize employees to report violations and vindicate their and their fellow employees' rights. Indeed, "it is the intent of the Legislature in section 1194 that minimum wage and overtime laws should be enforced in part of private action brought by aggrieved employees." *See Gentry*, 42 Cal.4th at 455-56.

Here, Plaintiff Bradescu filed this class action lawsuit, and Plaintiffs Luminelli and Tamayo joined in this lawsuit, to enforce California and the

---

*Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and federal express costs reimbursable).

FLSA's wage and hour laws through private enforcement. *See* Declaration of Maia Bradescu ("Bradescu Decl."), ¶ 4; Declaration of Steven Luminelli ("Luminelli Decl."), ¶ 4; Declaration of Vanessa Tamayo ("Tamayo Decl."), ¶ 4. All Plaintiffs assisted Class Counsel in prosecuting this case, and their efforts included gathering and organizing employment documents and records for use in this lawsuit, reviewing documents produced by Defendant, and identifying potential witnesses who were knowledgeable about Defendant's policies and practices and who could assist in prosecution of the action.  Bradescu Decl., ¶ 5; Luminelli Decl., ¶ 5; Tamayo Decl., ¶ 5.  In addition, Plaintiff Bradescu sat for her deposition on June 30, 2014 and again on August 20, 2014, and Plaintiff Tamayo sat for deposition on August 19, 2014. Bradescu Decl., ¶ 5; Tamayo Decl., ¶ 5.  All three Plaintiffs also executed a general release of claims which included all employment-related claims that are not wage and hour related, which other class members are not releasing. *See* Settlement Agreement, ¶ 7.2. Moreover, by their participation in this lawsuit, Plaintiffs exposed themselves to risk of retaliation by current and potential future employers who may learn of the lawsuit, as class action lawsuits are often publicized on websites such as law360.com, lawyersandsettlements.com, and other media outlets. Indeed, if one performs a Google search for "Maia Bradescu," the first several results pertain to this lawsuit.

Consequently, the Court should award the requested incentive payments to Plaintiffs "to compensate [the] class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also Schiller v. David's Bridal, Inc.*, 2012 WL 2117001 at *23 (E.D. Cal. June 11, 2012) (granting request for incentive payment based on class

representative's efforts in assisting class counsel, general release of claim, and financial risk).

Moreover, the requested amounts are not excessive, as the combined amount constitutes just over 1.2% of the MSA. *See, e.g., Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000, based on their contributions to litigation and the risk that being a class representative would harm their reputation); *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. April 21, 2011) (approving incentive payment constituting 1.8% of gross settlement fund); *Alvarado v. Nederend*, 2011 WL 90228, at *5 (E.D.Cal. 2011) (finding a $7,500 incentive award to each of the five representatives to be reasonable even where the gross settlement amounted to $505,058.60); *Singer v. Becton Dickinson and Co.*, Case No. 08-CV-821-IEG (BLM) (S.D. Cal. 2009) (approving incentive payment constituting 2.5% of gross settlement fund).  For these reasons, Plaintiffs and Class Counsel respectfully request that the Court grant the requested incentive payments.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant the requests of $233,100 for attorney's fees, $38,911.31 for costs, $5,000 incentive payment to Class Representative Bradescu and $2,000 incentive payment each to Class Representatives Luminelli and Tamayo.

Dated:  May 13, 2016

Respectfully submitted,

HAINES LAW GROUP, APC

By:      /s/Paul K. Haines
Paul K. Haines, Esq.