**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
2274 E. Maple Avenue
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

**BURROWS LAW FIRM**
Christopher L. Burrows (SBN 222301)
cburrows@cburrowslaw.com
8383 Wilshire Boulevard, Suite 634
Beverly Hills, California 90211
Tel: (310) 526-9998
Fax: (424) 644-2446

Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIA BRADESCU, STEVEN LUMINELLI, and VANESSA TAMAYO, on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HILLSTONE RESTAURANT GROUP, INC., a Delaware Corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 8:13-cv-01289-GW(RZx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Judge:    Hon. George H. Wu<br>Date:     June 27, 2016<br>Time:    8:30 a.m.<br>Courtroom: 10 |

NOTICE IS HEREBY GIVEN that on Monday, June 27, 2016 at 8:30 a.m., or as soon thereafter as the matter may be heard in Department 10 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, before the Honorable George H. Wu, Plaintiffs and Class Representatives Maia Bradescu, Steven Luminelli, and Vanessa Tamayo ("Plaintiffs") and Class Counsel Paul K. Haines and Fletcher W. Schmidt of Haines Law Group, APC and Christopher L. Burrows of Burrows Law Firm ("Class Counsel") will, and hereby do, move this Court for an order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the California Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Finally certifying the FLSA Settlement Class for settlement purposes under the Fair Labor Standards Act ("FLSA");

3. Granting final approval to the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Stipulation ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

4. Confirming Plaintiffs' appointment as Class Representatives for settlement purposes;

5. Confirming the appointment of Paul K. Haines and Fletcher W. Schmidt of Haines Law Group, APC and Christopher L. Burrows of Burrows Law Firm as Class Counsel for settlement purposes;

6. Entering final judgment in the form of the proposed Final Approval Order filed herewith.

///
///
///
///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the supporting declaration of Stephanie Molina of ILYM Group, Inc., all exhibits attached thereto, the proposed Order, the Settlement Agreement, all other pleadings, declarations, and other papers on file in this action, and any oral argument or other matter that may be considered by the Court.

Respectfully submitted,

Dated:  May 27, 2016                    HAINES LAW GROUP, APC


By:    _/s/Paul K. Haines_____
Paul K. Haines, Esq.
Attorneys for Plaintiffs and the Classes

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................1

II. FACTUAL AND PROCEDURAL SUMMARY ................................3

    A. Summary of Plaintiffs' Claims .................................................3

    B. Procedural History ...................................................................4

III. THIS SETTLEMENT WARRANTS FINAL APPROVAL UNDER

    RULE 23 AND THE FLSA ............................................................4

    A. The Settlement Is Fair, Adequate, and Reasonable ..................5

        1. The Strength of Plaintiffs' Case ........................................6

        2. Risk, Expense, Complexity, and Duration of Further Litigation.....9

        3. Risk of Maintaining Class Action Status ......................10

        4. Amount Offered in Settlement Is Reasonable Given the

           Realistic Value of the Claims In Light of the Litigation Risks......10

        5. Discovery Completed and the Status of Proceedings ...................14

        6. The Experience and Views of Counsel .........................................14

        7. The Reaction of the Class Members to the Proposed

           Settlement ......................................................................15

IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS

    PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED........16

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE

    PROCESS .....................................................................................17

VI. CONCLUSION.................................................................................18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Federal Cases**

*Churchhill Village, L.L.C. v. General Electric*
    361 F.3d 566 (9th Cir. 2004) ...................................................................17

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ...................................................................5

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156 (1974)..................................................................................17

*Elliot v. Spherion Pacific Work, LLC*
    572 F.Supp.2d 1169 (C.D. Cal. 2008).......................................................8

*In re Heritage Bond Litig.*
    546 F.3d 667 (9th Cir. 2008) .....................................................................4

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373 (9th Cir. 1995) .....................................................................14

*In re Syncor ERISA litigation*
    516 F.3d 1095 (9th Cir. 2008) ...................................................................4

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1350 (11th Cir. 1982) .................................................................5

*Marshall v. Holiday Magic, Inc.*
    550 F.2d 1173 (9th Cir. 1977) .................................................................15

*Marshall v. Valhalla Inn*
    590 F.2d 306 (9th Cir. 1979) .....................................................................3

*Moon v. Kwon*
    248 F.Supp.2d 201 (S.D.N.Y. 2002) .........................................................3

*Murillo v. Pacific Gas & Electric Co.*
    266 F.R.D. 468 (E.D. Cal. 2010)...............................................................5

*National Rural Tele. Coop. v. DIRECTTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)..........................................................9, 15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

*Rodriguez v. West Publishing Corp.*

    563 F.3d 948 (9th Cir. 2009) ........................................................................5

**State Cases**

*Huntington Memorial Hospital v. Superior Court*

    131 Cal.App.4th 893 (2005) ........................................................................3

*Thurman v. Bayshore Transit Management, Inc.*

    203 Cal.App.4th 1112 (2012) ....................................................................13

**Federal Statutes and Rules**

29 C.F.R. § 778.217(d) ..................................................................................3

Fed. R. Civ. P. 23(e)(2) ...........................................................................5, 16

IRS Rev. Rule 2012-18 ...................................................................................7

**State Statutes and Rules**

Cal. Lab. Code § 203 ..................................................................................4, 8

Cal. Lab. Code § 226 ..................................................................................4, 8

Cal. Lab. Code § 2698 ................................................................................4, 8

Cal. Lab. Code § 2699(e)(2) ...........................................................................9

**Unpublished Cases**

*Carney v. Hillstone*

    Case No. 2:10-cv-02988-GW-RZ..............................................................16

*Fleming v. Covidien*

    Case No. ED CV10-01487 RGK (OPx)

    (C.D. Cal. August 12, 2011) ......................................................................13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

*Gribble v. Cool Transports Inc.*
   Case No. CV 06-04863 GAF SHX, 2008 WL 5281665
   (C.D. Cal. December 15, 2008) .................................................................15

*In re Portal Software, Inc. Securities Litig.*
   Case No. C-03-5138 VRW, 2007 WL 4171201
   (N.D. Cal. Nov. 26, 2007) .......................................................................10

*Schiller v. David's Bridal, Inc.*
   Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001
   (E.D. Cal. June 11, 2013) .......................................................................16

*Willner v. Manpower Inc.*
   Case No. C 11-02846 JSW, 2012 WL 1570789
   (N.D. Cal. May 3, 2012).............................................................................9

*Wren v. RGIS Inventory Specialists*
   Case No. C-06-05778 JCS, 2011 WL 1230826
   (N.D. Cal. April 1, 2011)...........................................................................5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Maia Bradescu, Vanessa Tamayo and Steven Luminelli (collectively "Plaintiffs") seek final approval of this class, collective and representative action settlement, entered into by Plaintiffs and Defendant Hillstone Restaurant Group, Inc. ("Hillstone").  This settlement provides for a maximum gross settlement amount of up to $700,000 to settle the claims of approximately no less than 1,213[1] current and former California employees for a variety of wage and hour claims pled under Rule 23 and the FLSA ("California Settlement Class"), and no less than 303 opt-in Plaintiffs who worked outside of California solely for allegedly unpaid overtime wages based on Defendants' alleged miscalculation of the regular rate of pay ("FLSA Settlement Class").[2]

This Settlement is the culmination over nearly three years of hard fought litigation, including: Hillstone's partially successful motion for summary judgment, denial without prejudice of Plaintiff Bradescu's motion for class certification, 15 depositions (including multiple Rule 30(b)(6) depositions, expert depositions, and depositions of Plaintiff Bradescu and Tamayo and numerous putative class members), extensive classwide data analysis as to all pertinent claims resulting in construction of a classwide damages model, and a failed mediation followed by months of continued negotiations through the mediator, which ultimately resulted in resolution of the action.  While the details of

---

[1] There are 1,213 Participating California Settlement Class Members, all of whom will receive an individual settlement payment, per the terms of the Settlement. There are a total of 3,225 California Settlement Class Members (i.e., all California Settlement Class Members who did not opt-out of the Settlement) who will release the Released Claims against Hillstone, per the terms of the Settlement.

[2] These figures are current as of May 27, 2016, although it is possible that additional opt-ins will be received after this date, thereby increasing the total number of participating individuals. *See* Declaration of Stephanie Molina at ¶ 13.

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

Plaintiffs' litigation efforts are more fully detailed in Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Payments (Docket Entry ("Dkt.") No. 143, at pp. 2-7), the parties' extensively litigated this matter before a settlement was reached.

In its December 10, 2015 minutes regarding Plaintiffs' Motion for Preliminary Approval of Class, Collective, and Representative Action Settlement, this Honorable Court concluded that the Settlement "'falls within the range of possible approval' of being 'fair reasonable and adequate' [] considering the risks of continued litigation and the difficulties posed in any class action setting…" *See* Docket Entry ("DE") No. 135 at p. 6.  The Settlement provides for an automatic payment to: (i) all currently employed individuals of Hillstone in California who have not opted out of the settlement, (ii) all formerly employed individuals of Hillstone in California who have submitted a claim form; and (iii) all FLSA Settlement Class Members who have affirmatively opted-in under the FLSA.

Notice of the proposed Settlement was provided to the Settlement Class via first class mail on March 24, 2016.  *See* Declaration of Stephanie Molina ("Molina Decl."), ¶ 6.  At the conclusion of the opt-out period, not a single member objected to the settlement.  *Id.*, ¶ 11.  No less than 1,213 current and former California Settlement Class Members will participate in the settlement, while no less than 303 FLSA Settlement Class Members have opted-in and will participate under the FLSA.  *Id.,* ¶ 13.

Based on the claims received through May 27, 2016 (the last date to submit a claim was May 23, 2016, although presumably not all claims have been received as of the date of this filing), the average payment to California Class Members will be approximately $142.23, while the average payment to FLSA Class Members will be approximately $53.54.   *See* Molina Decl., ¶¶ 16-17.  Moreover, not a single Settlement Class Member has objected to the settlement, and only 0.71% of California Settlement Class Members chose to exclude themselves from the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

settlement. *Id.*, ¶¶ 11-12.   In light of the positive results achieved for the Settlement Classes and lack of any objection from the Settlement Classes, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.   FACTUAL AND PROCEDURAL SUMMARY

### A.   Summary of Plaintiffs' Claims

Hillstone owns numerous restaurants throughout the United States in California, Arizona, Colorado, Florida, Georgia, Illinois, Massachusetts, Maryland, Missouri, New Jersey, New York, Tennessee, and Texas; and under brand names including Houston's, Gulfstream, Bandera, Palm Beach Grill, and R+D Kitchen.

Plaintiffs alleged that during the relevant time period, Hillstone provided various forms of bonuses and incentive pay to their non-exempt employees—including 18% automatic service charges for large parties, training bonuses, and free meals—but unlawfully failed to include the value of these forms of compensation in non-exempt employees' regular rates of pay.  *See* Dkt. No. 132. Consequently, Plaintiffs asserted Hillstone's payroll practices resulted in a company-wide miscalculation of non-exempt employees' overtime rates and a systematic underpayment of overtime wages under California and Federal law. *See* 29 C.F.R. 778.217(d) (stating that the value of meals must be included in the regular rate of pay); *Marshall v. Valhalla Inn,* 590 F.2d 306, 308 (9th Cir. 1979) ("The court further held that…the reasonable value of the meals were to be included in computing the regular rate of pay."); *Moon v. Kwon*, 248 F.Supp.2d 201, 230 (S.D.N.Y. 2002); *Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893, 902-903 (2005) (payments included in the calculation of the regular rate are generally consistent under state and federal law).

The original Complaint also alleged that as a result of miscalculating the regular rate of pay, Hillstone paid meal period premium payments for meal periods that were not paid at the correct rate of pay. *See* Dkt. No. 1.  Plaintiff Bradescu further alleged in the Second Amended Complaint that Hillstone failed to provide

3

Plaintiffs with legally compliant meal periods and required them to enter into unlawful on-duty meal period agreements. *See* Dkt. No. 120.

The original Complaint also alleged that Hillstone failed to maintain a lawful rest period policy and as a result, Hillstone did not authorize and permit putative class members to take all rest periods to which they were entitled. *See* Dkt. No. 1.

The original Complaint also alleged that Plaintiff and putative class members were required to purchase black slip resistant shoes, pants, shirts, ties and aprons, but were not adequately reimbursed for the cost of such items.  As a result, the original Complaint alleged that Plaintiffs and putative class members were not adequately reimbursed for their necessary business expenditures. *See* Dkt. No. 1.

Because of these predicate violations, Plaintiffs maintained that Hillstone failed to comply with its final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226.  Moreover, in addition to statutory penalties, Plaintiffs sought civil penalties under PAGA, Labor Code § 2698 *et seq*. *See* Dkt. Nos. 1, 120 & 132.

### B.  Procedural History

Because the extensive procedural history of this action is described in detail in Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Payments (Dkt. No. 143, at pp. 2-7), Plaintiffs will avoid repeating them here in the interests of brevity.

## III.  THIS SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23 AND THE FLSA

A class action can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e).  Thus, in order to approve this proposed settlement, this Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008). According to the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

*re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The Court should approve the release of FLSA claims if it appears to be the result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1355. Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim. Compare *Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).

### A.  **The Settlement Is Fair, Adequate, and Reasonable.**

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; [3] and (8) the reaction of the class members to the proposed settlement. *See Rodriguez*, *supra*, 563 F.3d at 963. Plaintiffs address each of these factors below.

///

---

[3] This factor is not addressed because there is no governmental participant. *See, e.g., Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").

5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

1      **1.      The Strength of Plaintiffs' Case.**

2           Although Plaintiffs steadfastly maintain that their claims are meritorious,

3      Plaintiffs acknowledge that Hillstone possessed legitimate defenses to liability and

4      certification.  *See* Declaration of Paul Haines filed in support of Plaintiffs' Motion

5      for Preliminary Approval ("Haines Decl."), ¶ 14.[4]  For example, with respect to

6      Plaintiffs' allegations that Hillstone failed to properly calculate the regular rate of

7      pay as a result of failing to include the value of free meals, training bonuses and

8      automatic gratuities into the regular rate, Hillstone possessed numerous defenses at

9      certification and on the merits.  *Id.*

10          Specifically, with respect to free meals, Hillstone lacked any uniform

11     classwide common evidence of who received a free meal, the value of such a meal,

12     or why it was provided.  Haines Decl., ¶ 14.  As such, determining who received a

13     free meal, on what date and why they received the meal, potentially created a host

14     of individualized issues.  *Id.*  Based on the lack of evidence on this claim, Plaintiffs

15     were only able to calculate potential maximum exposure of approximately $22,650

16     for the Rule 23 California Class and $34,225 for the FLSA Settlement Class.  *Id.*

17          With respect to training bonuses, Hillstone also lacked common evidence as

18     to who received training bonuses, and whether the bonus was provided for training

19     or some other reason, although there was some common evidence that could be

20     used for segments of the class.  Haines Decl., ¶ 15.  Specifically, Hillstone only has

21     located training logs for some of its locations.  *Id.*  As such, Plaintiffs faced

22     substantial hurdles to class certification, as a result of lacking common evidence,

23     for an unpaid overtime class based on a miscalculation of the regular rate of pay

24     resulting from the receipt of free meals and training bonuses.  *Id.*  Based on the

25     available evidence, Plaintiffs' retained expert calculated a potential maximum

26     _____

27     [4] Because these factors were also evaluated in Plaintiffs' Motion for Preliminary
       Approval (Dkt No. 133), all references to the Declaration of Paul Haines refer to
28     the Haines Declaration filed in Support of Preliminary Approval (Dkt No. 133-1).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

exposure of $8,234 to the Rule 23 California Class and $14,023 to the FLSA Settlement Class. *Id.*

With respect to Plaintiffs' contention that Hillstone miscalculated the regular rate of pay by failing to include automatic gratuities in the regular rate, while there was ample common evidence to support this theory of liability, Plaintiff nevertheless faced obstacles to prevailing on the merits, especially given that IRS Rev. Rule 2012-18 stated that the IRS would not begin enforcing this law until January 1, 2014, which coincided with the date that Hillstone discontinued this practice at its locations nationwide. *See* Haines Decl., ¶ 16. Plaintiffs' retained expert calculated a maximum exposure of $107,741 for all Rule 23 California Class Members, and $195,817 for all FLSA Settlement Class Members. *Id.*

With respect to Plaintiffs' allegation that Hillstone paid meal period premiums at the incorrect rate of pay as a result of the regular rate miscalculation, the Court summarily adjudicated this claim in Hillstone's favor. *See* Dkt. No. 78. With respect to Plaintiffs' allegation that Hillstone failed to provide legally compliant meal periods and required non-exempt employees to enter into unlawful on-duty meal period agreements, the timekeeping and payroll data of Hillstone's non-exempt employees in California reflects that on any date where there is an untimely meal period or no meal period, Hillstone's timekeeping system automatically triggered a payment of a meal period premium. Haines Decl., ¶ 17. As such, it appears that any time there was a meal period violation, Hillstone paid the appropriate penalty, which caused Plaintiffs to drop the meal period claim in the Third Amended Complaint. *Id.; see also* Dkt. No. 132.

The original Complaint also alleged that Hillstone failed to maintain a lawful rest period policy and as a result, Hillstone did not authorize and permit putative class members to take all rest periods to which they were entitled. Dkt. No. 1. However, in the course of discovery, Hillstone produced legally compliant rest period policies that were used throughout the relevant time period by Hillstone.

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

Haines Decl., ¶ 18.  In light of Hillstone's legally compliant rest period policies, Plaintiffs would have had an extremely difficult time pointing to any common evidence to certify this claim.  *Id.*  As a result, this claim was dismissed at the filing of the Second Amended Complaint.  *Id.; see also* Dkt. No. 120.

The original Complaint also alleged that Plaintiff and putative class members were required purchase black slip resistant shoes, pants, shirts, ties and aprons, but were not adequately reimbursed for the cost of such items.  Dkt. No. 1. As a result, the original Complaint alleged that Plaintiff and putative class members were not adequately reimbursed for their necessary business expenditures.  *Id.*  However, discovery revealed that an $8.00 uniform allowance was paid every week to all California Class Members, and that these Class Members were able to purchase a variety of different shoes, pants and shirts that varied in price. Haines Decl., ¶ 19.  As such, the allowance could have been sufficient for some Class Members, but insufficient for others depending on what items they purchased and in what quantities, potentially creating a host of individualized issues.  *Id.* Because of the substantial hurdles that Plaintiffs faced at certification, this claim was dismissed at the filing of the First Amended Complaint.  *Id.*; *see also* Dkt. No. 103.

Because of these predicate violations, Plaintiffs maintained that Hillstone failed to comply with its final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226.  Plaintiffs also sought civil penalties under PAGA, Labor Code § 2698 *et seq*.  Because these derivative claims are wholly derivative of the claims described above, Plaintiffs' chances of succeeding on these claims was dependent on the success of the aforementioned claims. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims.  Because all of Plaintiffs' other claims fail as a matter of law, so does her PAGA claim.").  Hillstone also asserted that any civil

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

1    penalties were unconstitutional because they were confiscatory since the penalties

2    sought were grossly disproportionate to the actual amount of alleged unpaid wages

3    owed.  Haines Decl., ¶ 20; *Willner v. Manpower Inc.*, Case No. C 11-02846 JSW,

4    2012 WL 1570789 at *7 (N.D. Cal. May 3, 2012) ("The Court retains discretion

5    over awards under a PAGA claim and may 'award a lesser amount than the

6    maximum civil penalty amount specified [under PAGA] if, based on the facts and

7    circumstances of the particular case, to do otherwise would result in an award that

8    is unjust, arbitrary and oppressive, or confiscatory.'") (citing Lab. Code §

9    2699(e)(2)).

10           In short, Plaintiffs' ability to certify, and prevail on their claims was far from

11   guaranteed.  Indeed, "[i]n most situations, unless the settlement is clearly

12   inadequate, its acceptance and approval are preferable to lengthy and expensive

13   litigation with uncertain results."  *National Rural Tele. Coop. v. DIRECTTV, Inc.*,

14   221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Thus, this

15   factor supports preliminary approval

16           **2.      Risk, Expense, Complexity, and Duration of Further Litigation**

17           This factor also weighs in favor of final approval. Although the parties had

18   engaged in a significant amount of discovery and litigation spanning over two

19   years, which included the Court's ruling on Plaintiffs' Motion for Class and

20   Conditional Certification and Hillstone's Motion for Summary Judgment, the

21   majority of the claims alleged by Plaintiffs were still at issue in the case, although

22   no class had been certified. *See* Haines Decl., ¶ 21.  As such, were this case to not

23   settle, Plaintiffs would be required to file a renewed motion for class and

24   conditional certification, as to those claims that the Court had not dismissed

25   previously at the summary judgment stage (*see* Dkt. No. 78), or in response to

26   Hillstone's anticipated motions for summary judgment as to Plaintiffs Luminelli

27   and Tamayo. *Id.*

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS,
COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

As a result of this substantial motion practice that was still ahead of the parties, the parties would incur considerably more attorneys' fees and costs through subsequent certification and summary judgment proceedings. This settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors final approval of the settlement.

### 3. <u>Risk of Maintaining Class Action Status</u>

Plaintiffs faced substantial risks with respect to obtaining class and conditional certification, especially given that the Court had already denied Plaintiff Bradescu's Motion for Class and Conditional Certification, although the denial was without prejudice. *See* Dkt. No. 102. While Plaintiffs believed they would be able to demonstrate that class certification was appropriate through their renewed certification motion in light of the additional discovery they had obtained, and the expert report which they intended to provide in support of certification, no class had yet been certified. *See* Haines Decl., ¶ 22. Moreover, Hillstone intended to file motions for summary judgment as to Plaintiffs Luminelli and Tamayo, which Hillstone contended would have limited the scope of the classes that could have potentially been certified. *Id.* In short, given the Court's initial denial of class certification, it is likely that none or only some of the classes Plaintiffs sought to certify would have been certified by the Court. *Id.* This factor also supports final approval of the settlement.

### 4. <u>Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks</u>

With respect to Plaintiffs' claim for failure to pay all overtime wages as a result of failing to include free meals in the regular rate of pay, Plaintiffs believed there was a 30% chance of certifying this claim based on the lack of common

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

evidence, and a 40% chance of prevailing on the merits.  Haines Decl., ¶ 23.  As such, Plaintiff projected the reasonable value of the claims of the California Settlement Class at $2,718, and the claims of the FLSA Settlement Class at $4,107. *Id.*

With respect to the claim for failure to pay all overtime wages as a result of failing to include training bonuses in the regular rate of pay, Plaintiffs believed there was a 50% chance of certifying this claim based the common evidence that existed for some of these locations, and an 80% chance of prevailing on the merits, given that there was substantial evidence that the training bonuses were non-discretionary and paid each time an employee trained a new employee.  Haines Decl., ¶ 24.  As such, Plaintiff projected the reasonable value of the claims of the California Settlement Class at $3,294, and the claims of the FLSA Settlement Class at $5,609.  *Id.*

With respect to the claim for failure to pay all overtime wages as a result of failing to include automatic service charges in the regular rate of pay, Plaintiffs believed there was an 80% chance of certifying this claim based on the common evidence that existed for some of these locations, and a 60% chance of prevailing on the merits, in light of the IRS Regulations holding that such bonuses would not be considered wages by the IRS until January 1, 2014, which coincided with the date Hillstone changed its policy of automatically adding a service charge to large parties.  Haines Decl., ¶ 25.  As such, Plaintiff projected the reasonable value of the claims of the California Settlement Class at $51,716, and the claims of the FLSA Settlement Class at $93,992. *Id.*

With respect to Plaintiffs' allegation that Hillstone paid meal period premiums at the incorrect rate of pay as a result of the regular rate miscalculation, Plaintiff placed no value on this claim, given that the Court summarily adjudicated this claim in Hillstone's favor.  *See* Dkt. No. 78; *see also* Haines Decl., ¶ 26.

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

Regarding Plaintiffs' claim that Hillstone failed to provide legally compliant meal periods and required non-exempt employees to enter into unlawful on-duty meal period agreements, the timekeeping and payroll data of Hillstone's non-exempt employees in California reflects that on any date where there is an untimely meal period or no meal period, Hillstone's timekeeping system automatically triggered payroll to pay an automatic meal period premium.  Haines Decl., ¶ 27.  Because Hillstone's system was programed in this fashion, Plaintiffs assumed there was no chance of prevailing on the merits of this claim, given that any purported meal period violation triggered a meal period premium payment in Hillstone's payroll system.  *Id.*  Consequently, it was clear that Hillstone was not enforcing the on-duty meal period agreement, given that it was paying a premium in those instances in which a meal period was not provided.  *Id.*  As such, Plaintiffs placed no value on the meal period claim, and as a result, Plaintiffs dismissed this claim upon the filing of the Third Amended Complaint.  *Id*; *see also* Dkt. No. 132.

The original Complaint also alleged that Hillstone failed to maintain a lawful rest period policy and as a result, Hillstone did not authorize and permit putative class members to take all rest periods to which they were entitled.  Dkt. No. 1.  However, in the course of discovery, Hillstone produced legally compliant rest period policies that were used throughout the relevant time period by Hillstone.  Haines Decl., ¶ 28.  In light of Hillstone's legally compliant rest period policies, and lack of common evidence supporting any failure by Hillstone to authorize and permit rest periods to its employees, Plaintiffs believed there was no chance of certifying this claim, and therefore, dismissed this claim at the filing of the Second Amended Complaint, and placed no value on it for settlement purposes. *Id.*

With respect to the claim in the original Complaint that Plaintiffs and putative class members were required purchase black slip resistant shoes, pants, shirts, ties and aprons, but were not adequately reimbursed for the cost of such items, this claim was dismissed with the filing of the First Amended Complaint,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

given that Plaintiff believed any inquiry into whether the weekly $8.00 uniform reimbursement was adequate would turn on highly individualized evidence, thereby precluding class certification.  Haines Decl., ¶ 29.  As a result, Plaintiffs did not value this claim for purposes of settlement.  *Id.*

In light of the foregoing violations, Plaintiffs contended that they would be able to obtain waiting time penalties, based on Hillstone's alleged "willful" failure to pay all wages owing to its former employees at the time of separation.  Haines Decl., ¶ 30.  However, given the difficulties in certifying the predicate overtime classes from which this claim would flow, and Hillstone's numerous arguments both at certification and as to the merits of the willfulness of this claim, Plaintiffs believed there was approximately a 40% chance of certifying this claim, and a 15% chance of prevailing on the merits of this claim, to arrive at a total value for this claim of approximately $464,662.  *Id.*

Similarly, Plaintiffs' wage statement claim was predicated on the success of their overtime claim flowing from the alleged miscalculation of the regular rate of pay.  *See* Haines Decl., ¶ 31.  As such, Plaintiffs assumed a similar 40% chance of certifying this claim, and given that there is no need to meet the higher "wilful" standard, assumed a 25% chance of prevailing on the merits of this claim, to reach an estimated total value for this claim of approximately $656,050.  *Id.*

With respect to potential PAGA civil penalties, Plaintiffs believed that valuation of this claim was too speculative at this juncture, especially in light of the Court's authority to reduce the value of any such penalties in its discretion, and without knowing whether waiting time penalties or wage statement penalties would also be assessed by the Court.  *See* Haines Decl., ¶ 32*;see also, e.g., Fleming v. Covidien,* Case No. ED CV10-01487 RGK (OPx), Document 236 at p. 5, (C.D. Cal. August 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v. Bayshore Transit Management, Inc.,* 203 Cal.App.4th

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

1112, 1135 (2012) (affirming trial court's finding that awarding the maximum PAGA penalties would be unjust).

### 5. **Discovery Completed and the Status of Proceedings.**

As detailed in Plaintiff's Motion for Preliminary Approval at pages 2-7, the parties engaged in a significant amount of discovery and analysis prior to reaching the proposed settlement. *See* Haines Decl., ¶¶ 11-13.  Not only did Hillstone produce all applicable policies in this action, but it also produced all timekeeping and payroll records for all members of the putative class for the entire putative class period. *Id.*, ¶ 12.  In addition, Hillstone produced all records reflecting the payment of automatic gratuities and provision of free meals to all members of the California and FLSA Settlement Classes, in addition to a sampling of records relating to the payment of training bonuses, for those locations where records were available. *Id.*

Plaintiffs had all California and FLSA Settlement Class Members' payroll and timekeeping data, in addition to all records reflecting the payment of automatic gratuities and provision of free meals, statistically analyzed by a third-party expert consultant with a Ph.D in economics, who then created a detailed exposure analysis. *Id.*, ¶ 12.  It was only after an extensive review of this data, a failed mediation, denial in part of Hillstone's Motion for Summary Judgment, denial without prejudice of Plaintiffs' Motion for Summary Judgment, and weeks of continued settlement discussions through mediator Jeffrey Krivis, that the parties ultimately reached a settlement in principle, which then took several months to finally memorialize. *Id.*, ¶¶ 12-13.  This factor supports final approval of the settlement.

### 6. **The Experience and Views of Counsel.**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th

14

Cir. 1995).  Here, Plaintiffs are represented by experienced wage and hour class action counsel who collectively possess more than two decades of plaintiff- and defense-side wage and hour class action experience litigating claims alleging overtime, minimum wage, meal and rest period, and related wage statement and final payment violations.  *See* Haines Decl., ¶¶ 2-9; Declaration of Christopher L. Burrows ("Burrows Decl."), ¶¶ 4, 7-11; Declaration of Fletcher W. Schmidt ("Schmidt Decl."), ¶¶ 2-7.[5]  Class Counsel have been certified as Class Counsel in numerous other cases alleging claims similar to those at issue in this litigation.  *Id.*  Class Counsel fully evaluated the strengths and weaknesses of Plaintiffs' claims, both as to class certification and the merits, and believe that the proposed Settlement is an excellent result for the Settlement Class.  Haines Decl., ¶ 10.  This factor strongly supports final approval. *See, e.g., Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most likely acquainted with the facts of the underlying litigation.").

### 7.  The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object.  *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *See National Rural Tele. Coop., supra*, 221 F.R.D. at 529.

Here, the response to the Settlement has been overwhelmingly positive. Not a single class member filed an objection to the proposed settlement after notice was provided to the potential California and FLSA Settlement Class

---

[5] The citations to the Burrows Declaration and Schmidt Declaration reference their Declarations filed in Support of Preliminary Approval (Dkt Nos. 133-2 and 133-3).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

Members informing them about the terms of the proposed settlement, their estimated individual settlement payout and rights under the settlement, the amounts sought by Class Counsel in attorneys' fees and costs, and the amount sought by the Class Representatives as an enhancement award.  *See* Molina Decl., ¶ 11.  Moreover, only 0.71% of the California Settlement Class Members have elected to exclude themselves from the Settlement.  *Id.* at ¶ 12.

Notably, the participation rate of Settlement Class Members in this action (42.66%), is nearly exactly on par with a prior action against Hillstone, which this Court previously approved, and which asserted a number of similar and overlapping claims. *See Carney v. Hillstone*, Case No. 2:10-cv-02988-GW-RZ, at Dkt. No. 61-2, at ¶ 13 (the *Carney* settlement class claimed approximately 42.83% of the settlement fund).  The average payout to California Settlement Class Members in this case ($142.23) is also comparable to the average payout to the Settlement Class members in *Carney. See id.* (average payout to participating class members in *Carney* was about $179, based on $198,000 divided among 1,106 participating class members).  Moreover, given Hillstone's contention that it had since remedied any wage and hour violations alleged in the *Carney* action, the result achieved by Plaintiffs here is laudable.

## IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED

In its February 23, 2016 order granting preliminary approval, this Court certified the California and FLSA Settlement Classes settlement purposes. *See* Dkt. No. 141.  Because circumstances have not changed, and for the reasons set forth in her motion for preliminary approval (*See* Dkt. No. 133), Plaintiffs request that the Court finally certify the Settlement Class for settlement purposes under Rule 23(e) and the FLSA.  *See Schiller v. David's Bridal, Inc.,* Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *8 (E.D. Cal. June 11, 2012) ("As initially determined

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT

in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

## V.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).   Here, the parties engaged ILYM Group, Inc. ("ILYM"), an experienced third-party settlement administrator, to mail the Class Notice and related forms to settlement class members. *See* Molina Decl., ¶¶ 2-5.

On March 24, 2016, and via First Class mail, ILYM mailed the Class Notices and Opt-in Form to all 12,672 potential California and FLSA Settlement Class Members. *See* Molina Decl. at ¶ 6.  The mailing addresses contained in the class list were processed and updated using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *See id*.  The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id*.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet.  *Id*.

The Class Notice contained information and explanations about the claims in the litigation and the terms of the settlement, the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, the right of non-California Settlement Class members to opt-in to the settlement, and the calculation of settlement shares, including estimated individual settlement payment amounts.  *See id* at ¶ 6, Ex. A.  The notice also informed the

17

Settlement Class of deadline for objecting to the settlement, and the process for opting in or opting out. *Id.*

As of May 27, 2016, 1,843 notice packets had been returned by the post office as undeliverable.  Molina Decl., ¶ 7.  However, ILYM was able to locate updated addresses and re-mail 1,618 of these notice packets, either through skip tracing, or upon information being received by the class member.  *Id.* at ¶ 8.  Ultimately, only 290 notice packets (2.29%) were deemed undeliverable. *Id*. at ¶ 9.  Not a single member objected to the settlement.  *Id*. at ¶ 11.  For these reasons, Plaintiffs submit that the notice procedure implemented for this settlement meets the requirements of due process, and requests that the Court approve the payment of $39,000 to CPT for administering the settlement.[6] *Id*. at ¶ 14.

## VI.   **CONCLUSION.**

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this Motion and enter the order granting final approval of the settlement.


                                            Respectfully submitted,
Dated:  May 27, 2016                        HAINES LAW GROUP, APC

                             By:    _/s/Paul K. Haines_____
                                    Paul K. Haines, Esq.
                                    Attorneys for Plaintiff and the Classes

---

[6] As noted in the Stipulation for an Order to Increase the Claims Administration Fee filed concurrently herewith, Hillstone mistakenly obtained a bid for only a segment of the putative class, and did not realize its error until after the Court granted preliminary approval of the settlement.  Given this significant increase in the class size from the bid obtained, there is a need to increase the costs of the Claims Administrator by $14,000, from $25,000 to $39,000.

18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE AND REPRESENTATIVE ACTION SETTLEMENT